**WESTMORELAND REGIONAL HOSPITAL, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PICK-FORD), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2010.

Decided Sept. 23, 2011.

Gerald William Yanity, Latrobe, for petitioner.

Michael S. Russell, Pittsburgh, for respondent Linda Pickford.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge and BUTLER, Judge.

OPINION BY Judge LEAVITT.

 Westmoreland Regional Hospital (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (Judge) denial of Employer's modification petition. Employer sought to modify the disability status of Linda Pickford (Claimant) after an impairment rating evaluation (IRE) yielded a total body impairment of less than 50 percent. The Board denied Employer's petition after finding the impairment rating to be invalid because it assigned a zero impairment rating to a work-related condition that was asymptomatic

when the IRE was performed, but exhibited symptoms several months later. Concluding that it is the claimant's physical condition at the time of the IRE that governs the validity of the IRE, we reverse.

Claimant worked for Employer as a registered nurse. On July 4, 1997, a patient's bed collapsed, hitting Claimant. Employer issued a Notice of Compensation Payable (NCP) describing the injury as cervical and lumbar sprains. Thereafter, Employer sought a termination or suspension of benefits. In April 1999, the WCJ denied Employer's petition for the stated reason that Claimant was not fully recovered and could not resume her pre-injury job. In doing so, the WCJ credited the opinion of Claimant's treating physician, Gerald P. Durkan, M.D., that Claimant's work injury included cervical disc injuries, brachial plexus stretch, a lumbar strain and reflex sympathetic dystrophy (RSD).[1] Thus, the WCJ's decision expanded the list of Claimant's work injuries.

 Employer then requested the Department of Labor and Industry to appoint a physician to perform an IRE of Claimant to determine the degree of her total body impairment. Under Section 306(a.2) of the Workers' Compensation Act (Act),[2] IREs are governed by using the

---

1. RSD is defined as

 diffuse persistent pain usually in an extremity often associated with vasomotor disturbances, trophic changes, and limitation or immobility of joints; frequently follows some local injury.

 STEDMAN'S MEDICAL DICTIONARY 558 (27th ed.2000). RSD is "believed to be the result of dysfunction in the central or peripheral nervous systems." Reproduced Record at 91 a (R.R. _____):

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 511.2. Section 306(a.2) was added by the Act of June 24, 1996, P.L. 350. Sec-

tion 306(a.2) of the Act deals both with IREs requested within 60 days of the expiration of 104 weeks of total disability as well as with IREs requested beyond that window of time. Here, Employer requested the IRE outside the 60–day window, as permitted by Section 306(a.2)(6), which states in relevant part that "[u]pon request of the insurer, the employe shall submit to an independent medical examination in accordance with the provisions of section 314 to determine the status of impairment." 77 P.S. § 511.2(6). Section 306(a.2)(5) explains that the claimant's

 [t]otal disability shall continue until it is adjudicated or agreed under clause (b) that

American Medical Association Guides to the Evaluation of Permanent Impairment.[3] This means that the IRE physician must perform the examination and calculate the impairment rating according to the mandates of the AMA Guides. *Barrett v. Workers' Compensation Appeal Board (Sunoco, Inc.),* 987 A.2d 1280, 1287 (Pa. Cmwlth.), *appeal denied,* 608 Pa. 670, 13 A.3d 480 (2010). On September 27, 2006, Milton J. Klein, D.O., performed the requested IRE, and concluded that Claimant had a total body impairment of 22 percent. As a result, Employer filed a modification petition seeking to have Claimant's disability status changed from total to partial based on the IRE results.[4] Claimant filed an answer opposing the modification.

In support of its petition, Employer submitted the deposition testimony of Dr. Klein who is board certified in, *inter alia,* physical medicine and rehabilitation. Dr. Klein performed a complete physical examination of Claimant's neck, arms and back, and found her to manifest four conditions capable of being rated under the most recent edition of the AMA Guides at the time of the IRE: chronic discogenic cervical pain, chronic discogenic lower back pain, and bilateral shoulder pain with impingement. Dr. Klein assigned an impairment rating of five percent to the cervical region and five percent to the lumbar region caused by Claimant's disc problems. Because he found limitations in the range of motion for both shoulders, Dr. Klein assigned an impairment of seven percent for the right arm and six percent for the left arm. These ratings resulted in a 22 percent whole body impairment.

Dr. Klein acknowledged Claimant's work-related conditions of RSD and a brachial plexus injury, but he found no objective evidence of either condition in his physical examination. The AMA Guides require objective evidence of a condition in order to rate it.[5] Dr. Klein then explained

---

total disability has ceased or the employe's condition improves to an impairment rating that is less than fifty per centum of the degree of impairment defined under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment." 77 P.S. § 511.2(5).

3. "Impairment" is defined in Section 306(a.2)(8)(i) as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." 77 P.S. § 511.2(8)(i).

4. If an IRE yields an impairment rating of less than 50 percent, the claimant's disability status may be changed from total to partial. Section 306(a.2)(2), 77 P.S. § 511.2(2). In that case, the amount of benefits paid to the claimant remains the same but the benefits are classified as partial and are capped at 500 weeks of benefits. *Ford Motor/Visteon Systems v. Workers' Compensation Appeal Board (Gerlach),* 970 A.2d 517, 519 n. 3 (Pa.Cmwlth. 2009).

5. In his IRE report, Dr. Klein referenced Table 16–16 found on page 496 of the AMA Guides, 5th Edition. Reproduced Record at 242a. Specifically, the AMA Guides mandate that:

> The criteria listed in Table 16–16 predicate a diagnosis of CRPS [also known as RSD] upon a preponderance of objective findings that can be identified during a standard physical examination and demonstrated by radiologic techniques. At least eight of these findings must be present concurrently for a diagnosis of CRPS. Signs are objective evidence of disease perceptible to the examiner, as opposed to symptoms, which are subjective sensations of the individual.

LINDA COCCHIARELLA & GUNNAR B.J. ANDERSSON, AM. MED. ASSOC., GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (5th ed.2000) at 496. The criteria listed in Table 16–16 are changes in skin color, changes in skin temperature, edema, dry or overly moist skin, changes in skin texture, soft tissue atrophy, joint stiffness and decreased passive motion, nail changes, hair growth changes, radiographic evidence of bone change, and, finally, a positive bone scan. *Id.*

that the AMA Guides also require the exhibited condition to impair the person in some way. For RSD to be rated, it must cause a sensory or motor impairment. Because Claimant did not exhibit either objective evidence of RSD or any sensory or motor impairment in her arms, Dr. Klein assigned Claimant's RSD a zero impairment rating. Dr. Klein clarified that he was not opining that Claimant did not have RSD, stating:

> All I'm saying is when I examined [Claimant] on September 27, '06, I did not find any objective findings of reflex sympathetic dystrophy [RSD].... The purpose [of the examination] was for impairment rating. So, *I basically took her as she was when I saw her....* I generated the impairment rating evaluation based on the AMA guidelines.

Reproduced Record at 268a, 269a (emphasis added).

Likewise, Dr. Klein assigned the brachial plexus injury a zero impairment rating because Claimant exhibited no objective signs of this injury nor any sensory or motor impairment on the day of his examination. Dr. Klein explained that a brachial plexus injury could cause the type of painful shoulder motion Claimant displayed. However, he attributed the painful motion to the shoulder impingement for which he had already provided an impairment rating. Notably, the shoulder impingement, responsible for 13 percent of Claimant's total body impairment rating of 22 percent, was not one of her accepted work injuries.

In opposition, Claimant submitted the deposition testimony of Emilio R. Navarro, M.D., who is board certified in pain management and has been treating Claimant for pain management since 1998. Dr. Navarro testified that as a result of her neck injury, Claimant developed RSD affecting both arms. These RSD symptoms include burning pain; increased skin sensitivity; changes in skin temperature, color and texture; sparse hair growth; joint swelling and stiffness; and difficulty moving her arms. Dr. Navarro acknowledged that some of Claimant's symptoms are subjective and that the objective symptoms, such as skin temperature and sensitivity, can wax and wane. Dr. Navarro opined that over time, however, Claimant's RSD has progressed and that she needs continued pain management. He opined that Claimant is not capable of working because of the RSD. Dr. Navarro did not testify about any of Claimant's other work injuries, including brachial plexus stretch.

Dr. Navarro testified that he believed that he was on the Department's list of approved physicians that can be appointed to perform an IRE for the Department. However, he did not do an IRE of Claimant. Dr. Navarro was critical of Dr. Klein's IRE examination, noting that Dr. Klein saw her on one occasion. Dr. Navarro also stated that he did not consider Dr. Klein truly "independent" because Employer had hired him to perform the examination.

Claimant treated with Dr. Navarro from March 2000 to September 2007, and those medical records were admitted into evidence. In these records, Dr. Navarro documented objective evidence of RSD in Claimant on some visits but not on others. Critically, the records showed that Dr. Navarro saw Claimant on September 26, 2006, the day before the IRE, but he did not document any objective findings of RSD. R.R. 203a–204a.

The WCJ rejected Dr. Klein's impairment rating of 22 percent because it did not include a rating for two of Claimant's work injuries, *i.e.*, the RSD and brachial plexus stretch. The WCJ acknowledged Dr. Klein's testimony that he did not rate Claimant for RSD because she did not

exhibit the clinical signs required by the AMA Guides during his examination of her. The WCJ did not find Dr. Klein incredible or reject his assertion that objective evidence is needed before an impairment rating can be assigned to a condition, such as RSD. However, the WCJ rejected the IRE for the stated reason that Dr. Navarro found Claimant to exhibit objective evidence of RSD five months after the IRE. The WCJ explained her reasons for relying on Dr. Navarro as follows:

Dr. Navarro's observations are credible since he, unlike Dr. Klein, who only evaluated [Claimant] on one occasion, had the opportunity to evaluate [Claimant's] condition over time and become aware of the *fluctuations in her condition.* Although *Dr. Navarro's notes do not document physical examination findings consistent with reflex sympathetic dystrophy near the time of Dr. Klein's evaluation,* they do show the presence of these findings before and after Dr. Klein's evaluation. Dr. Klein admitted that it was possible for [Claimant] to be better or worse if he saw her on a different date.

WCJ decision, March 28, 2008, at 3; Finding of Fact 8d (emphasis added). Rejecting the IRE, the WCJ held that Employer failed to meet its burden of proof and denied Employer's modification petition.

■ Employer appealed, and the Board affirmed. The Board concluded that Dr. Klein's impairment rating was invalid because it did not include a rating for Claimant's RSD and brachial plexus stretch. The Board acknowledged that Dr. Klein's examination covered each of Claimant's work injuries. However, it concluded that

Dr. Klein's assignment of a zero impairment rating for Claimant's RSD and brachial plexus stretch was the equivalent of rejecting these established work injuries. The Board further determined that Dr. Navarro's testimony that Claimant exhibited symptoms of RSD several months after the IRE was fatal to Dr. Klein's IRE. Employer now petitions for this Court's review.[6]

■ On appeal, Employer argues that the Board erred in denying its petition to modify Claimant's benefit status on the basis of Dr. Klein's IRE, which was conducted in accordance with the Act. First, Employer rejects the Board's observation that Dr. Klein's opinion did not accept Claimant's work injury. Second, Employer argues that the WCJ and the Board both erred in concluding that Dr. Klein's impairment rating was invalid simply because he did not assign a rating to two of Claimant's work injuries, which were asymptomatic when the IRE was done. Third, Employer argues that the WCJ erred in relying on Dr. Navarro's testimony, rather than on Dr. Klein's own physical examination, which was performed in accordance with the AMA Guides. We address these issues *seriatim.*

Employer first argues, correctly, that the Board erred in asserting that Dr. Klein did not accept Claimant's work injury. The sole purpose of an IRE is to assess the claimant's degree of impairment. *Sign Innovation v. Workers' Compensation Appeal Board (Ayers),* 937 A.2d 623, 628 (Pa.Cmwlth.2007). This is precisely what Dr. Klein did. Dr. Klein acknowledged that the work injury included brachial plexus stretch and RSD, and he

---

**6.** This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown),* 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

specifically searched for evidence of both conditions in his physical examination. Dr. Klein did not opine that Claimant had not sustained those injuries, and he did not opine that Claimant was completely recovered from these conditions. He simply explained that he did not find objective evidence of those conditions, or that they impaired Claimant, on the day of the IRE.

■ Employer next argues that the Board erred in holding that an IRE physician must assign an impairment rating greater than zero to each work injury in order for the impairment rating to be valid. In fact, this error of the Board has been established. *Barrett*, 987 A.2d 1280, *appeal denied*, 608 Pa. 670, 13 A.3d 480 (2010), which was decided after the Board decided this appeal, held that an IRE that assigns a zero impairment rating to a work injury does not render the IRE invalid.[7] This is because the AMA Guides require objective evidence before a condition can be rated. Here, Dr. Klein found no objective evidence of either RSD or brachial plexus stretch and neither did Dr. Navarro one day before the IRE. In the absence of objective evidence, Dr. Klein could not assign more than a zero percent impairment to either condition without violating the AMA Guides.[8] *Barrett*, 987 A.2d at 1288. Employer prevails on its second issue.

We turn, then, to Employer's final issue. Employer contends that because an IRE takes place on one specific day, the only relevant consideration is the claimant's condition on that day. Employer notes that Dr. Navarro's testimony credited by the WCJ, actually supports Dr. Klein's impairment rating. This is because Dr. Navarro also did not document any objective signs of RSD one day before Dr. Klein examined Claimant.

Claimant concedes that Dr. Klein performed the IRE in accordance with the AMA Guides. Claimant also admits, as she must, that Dr. Navarro did not document objective findings of RSD in his examination of Claimant one day before Dr. Klein's IRE. However, Claimant rejects the notion that the impairment rating must be based on the Claimant's condition at the time of the IRE. Instead, Claimant contends that an IRE will be rendered invalid by medical records showing objective signs of a claimant's work injuries before and after the IRE.[9]

■ The employer who requests an IRE beyond 60 days following 104 weeks of total disability, as is the case here, must file a petition to have the claimant's status changed from total to partial. *Diehl v. Workers' Compensation Appeal Board (I.A.Construction)*, 607 Pa. 254, 279, 5 A.3d 230, 245 (2010). Our Supreme Court

7. The dissent suggests that *Barrett* turned on the credibility of the IRE physician. In actuality, the dispositive question was whether a physician's assignment of a zero impairment rating to a work injury rendered his opinion incompetent. This Court held that the IRE physician's opinion was competent because there was no objective evidence of the work injury on the day of the IRE examination. It is true that the WCJ found the IRE physician credible, but the credibility determination was not challenged.

8. As previously noted, Dr. Klein did assign a 13 percent impairment rating to bilateral

shoulder impingement, which was not one of Claimant's established work-related injuries. Dr. Klein explained that the impingement could cause the same type of painful shoulder motion that a brachial plexus injury would. In other words, Claimant did receive an impairment rating for a condition causing a shoulder problem, regardless of what it was called.

9. This final issue does not concern the brachial plexus injury. This is because Dr. Navarro did not treat or render an opinion regarding brachial plexus stretch.

has explained that when an employer files such a petition,

> the IRE becomes an item of evidence just as would the results of any medical examination the claimant submitted to at the request of his employer.... The physician who performed the IRE is subject to cross-examination, and the WCJ must make appropriate credibility findings related to the IRE and the performing physician. The claimant, obviously, may introduce his own evidence regarding his degree of impairment to rebut the IRE findings.

Id. (emphasis added). As Diehl explains, both the employer and claimant may introduce evidence relevant to a claimant's impairment, without elaborating on the type of evidence needed to rebut an IRE done by a Department-appointed physician.

The impairment rating system was developed by the AMA to quantify the monetary loss caused by a personal injury in an objective way. The AMA Guides have been used by states and the federal government for many years to determine eligibility to a variety of workers' compensation and related benefits. See, e.g., the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 902(10), 908(c)(13), 908(c)(23) (eligibility for permanent partial disability involving hearing loss is determined by the claimant's impairment rating under the AMA Guides); the Washington Industrial Insurance Act,

Wash. Rev.Code § 51.32.080(3)(a) and Wash. Admin. Code § 296–23–381 (amount of compensation for loss of function of extremities, partial loss of vision or hearing is based upon the claimant's impairment rating using the AMA Guides).

■ In Pennsylvania, initial eligibility for total disability benefits under the Act is based upon the opinion of a medical expert, not upon the AMA Guides. However, the Act uses the impairment rating system to limit the duration of benefits. A claimant who has reached maximum medical improvement and has an impairment rating below 50 percent will have his status changed from total to partial disability. Section 306(a.2) of the Act, 77 P.S. § 511.2. At the end of 10 years, or 500 weeks, the claimant's benefits terminate unless the claimant persuades a factfinder that his impairment rating has risen to at least 50 percent.

■ This case presents an unusual challenge because Claimant's manifestation of RSD will, in the words of her physician, "wax and wane." Under Section 306(a.2) of the Act, 77 P.S. § 511.2, an impairment rating determination is issued after an examination by a physician assigned by the Department, who has been approved by the Department as a professional trained to conduct IREs and to establish impairment ratings using the most recent edition of the AMA Guides.[10] The

10. Although Dr. Navarro believed he was on the Department's list of qualified IRE physicians, the WCJ found that he was not. Neither party argues that this list of qualified physicians is critical to a claimant's rebuttal case. In litigation, a party is best served by the expert with the best credentials, but this is not a substitute for a thorough study and sound analysis. A rebuttal IRE, proffering an impairment rating above 50 percent, may be evidence most persuasive to counter the IRE done at the employer's request. However, the claimant's expert may also successfully challenge the reliability of the IRE by pinpointing errors of fact or errors in the IRE physician's application of the AMA Guides. This is not to say that a claimant must engage an expert to defend against an IRE; the claimant may limit his defense to cross-examination of the IRE physician. The burden in an IRE proceeding rests with the employer. Here, Claimant chose to present an expert, Dr. Navarro, who did not testify that Claimant exhibited RSD symptoms at or near the time of Dr. Klein's IRE or that Claimant was

official IRE is not done by a claimant's physician or by the employer's preferred IRE physician.

■■■ The IRE physician must do a physical examination of the claimant using the AMA Guides to assess the level of the claimant's impairment. If an employer's modification petition is granted, the claimant's benefit status is changed "as of *the date of the IRE physician's evaluation*." *Ford Motor/Visteon Systems v. Workers' Compensation Appeal Board (Gerlach)*, 970 A.2d 517, 523 (Pa.Cmwlth.2009) (emphasis added). Both the Act and the AMA Guides anticipate and, indeed, require an impairment rating to be based on the claimant's condition on a particular day, *i.e.*, the "date of the IRE physician's evaluation." *Ford Motor*, 970 A.2d at 523. The IRE produces a snapshot of the claimant's condition at the time of the IRE, not a survey of the claimant's work-related injuries over a period of time.

*Diehl* explained that a claimant "may introduce his own evidence regarding his degree of impairment to rebut the IRE findings." *Diehl*, 607 Pa. at 279, 5 A.3d at 245. Claimant offered such evidence in the form of Dr. Navarro's testimony and Dr. Navarro's medical records.

■■■■ Dr. Navarro's testimony did not address the degree of her impairment.[11] Indeed, Dr. Navarro did not challenge Dr. Klein's work in any relevant way, such as how it deviated from the AMA Guides. Instead, Dr. Navarro claimed that Dr. Klein was biased as "employer's doctor." It was not true that Dr. Klein was chosen by Employer; he was chosen by the Department. Dr. Navarro complains that Dr. Klein only saw Claimant one time, but this testimony also misses the mark because the IRE is based upon a single examination. The remainder of Dr. Navarro's testimony addressed Claimant's disability and opined that she was not fully recovered, which is not relevant in an IRE proceeding.[12]

Claimant's other evidence consisted of Dr. Navarro's medical records that documented objective findings of RSD as of February 2007, five months after the IRE. Again, this evidence would be relevant if Claimant's full recovery had been at issue. However, it does not undermine the validity of the IRE where the issue is degree of impairment, not ability to work. In any case, Dr. Klein could not rely on another physician's notes to do his IRE, and he certainly could not rely on notes made five months after he did the IRE and issued his impairment rating.

Claimant offered no evidence to contradict Dr. Klein's testimony that he did not find objective signs of RSD on the day of the IRE. Dramatically, Claimant's doctor actually *confirmed* that there was no objective evidence of RSD the day before the IRE. The instant case is not one of pure credibility, as the dissent suggests.[13] Dr.

---

impaired by RSD, *i.e.*, had a sensory or motor loss.

11. Some commentators counsel against using a treating physician to do the IRE. This is because the impairment rating system seeks objective and consistent results. It is difficult for the treating physician to approach the impairment rating with the desired objectivity. *See* Christopher R. Brigham, *Misuse and Abuse, AMA Guides to the Evaluation of Permanent Impairment*, For The Defense, March 2006, at 22, 26.

12. Recovery is relevant where the employer seeks to terminate or reduce disability benefits. An impairment rating of less than 50 percent changes the claimant's disability status, but does not affect the benefit amount. *See, Ford Motor*, 970 A.2d at 519 n. 3.

13. Likewise, the majority's decision does not force the WCJ to accept the testimony of the IRE physician, as the dissent complains. It is noteworthy that, here, the WCJ did not reject the testimony of the IRE physician, Dr. Klein,

Navarro may have proved that Claimant was not fully recovered from RSD. That was not in dispute. The issue was impairment, not disability.

In sum, the IRE physician and Claimant's own doctor agreed that Claimant did not exhibit objective symptoms of RSD at the time of the IRE. As a result, the AMA Guides require a zero impairment rating for that condition. *Barrett*, 987 A.2d at 1288. Likewise, because there were no objective signs of a brachial plexus stretch injury at the time of the IRE, Dr. Klein was required to assign a zero impairment rating for that condition. There was no basis, then, for the Board to reject the IRE results. Because Dr. Klein's impairment rating was less than fifty percent, Employer is entitled to a modification of Claimant's disability status from total to partial as of September 27, 2006, the date of the IRE.[14]

Accordingly, we reverse the Board's order.

## ORDER

AND NOW, this 23rd day of September, 2011, the order of the Workers' Compensation Appeal Board dated May 20, 2009, in the above captioned matter is hereby REVERSED. Linda Pickford's disability status is modified from total to partial, effective September 27, 2006.

DISSENTING OPINION BY President Judge LEADBETTER.

I must respectfully dissent. The Majority concludes that Westmoreland Regional Hospital (Employer) met its burden of establishing entitlement to modify the disability status of Linda Pickford (Claimant) from total to partial based on the impairment rating evaluation (IRE) results. To reach its conclusion, the Majority disregards credibility determinations made by the Workers' Compensation Judge (WCJ) in deciding the accuracy of the IRE rating. The Majority's conclusion is contrary to the Pennsylvania Supreme Court's holding in *Diehl v. Workers' Compensation Appeal Board (I.A.Construction)*, 607 Pa. 254, 5 A.3d 230 (2010), which reaffirmed the role of the WCJ as the ultimate fact-finder in a proceeding on a petition to modify a claimant's disability status based on results of an IRE requested by an employer more than 60 days after the claimant's receipt of 104 weeks of total disability benefits.

Section 306(a.2)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by Section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2(1), provides in relevant part:

> When an employe has received total disability compensation pursuant to clause (a) [Section 306(a), 77 P.S. § 511 (schedule of total disability benefits)] for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer *within sixty days upon the expiration of the one hundred four weeks to determine the degree of impair-*

___

as not credible. Rather, she denied Employer's petition on the basis of Dr. Navarro's testimony that Claimant was still disabled. However, ability to work is not relevant to an impairment evaluation.

14. Claimant is not left without a remedy. Section 306(a.2)(4) of the Act allows a claimant to challenge the change of her disability status at any time during the 500 weeks of partial disability if she obtains an impairment rating of at least 50 percent using the AMA Guides. 77 P.S. § 511.2(4). Thus, if Claimant attends an examination at which she is symptomatic to the point where her impairment rating increases to 50 percent or greater, she can petition to have her disability status returned to total disability.

*ment due to the compensable injury,* if any. The degree of impairment shall be determined based upon an evaluation by a physician . . ., chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment [AMA Guides]." [Emphasis added.]

If an IRE is requested within 60 days of receipt of 104 weeks of total disability benefits and results in an impairment rating of 50% or greater, the claimant is "presumed to be totally disabled" and will continue to receive total disability benefits; if the impairment rating is less than 50%, the claimant's disability status changes from total to partial disability upon 60–day notice. Section 306(a.2)(2) of the Act.

In *Gardner v. Workers' Compensation Appeal Board* (*Genesis Health Ventures* ), 585 Pa. 366, 888 A.2d 758 (2005), the Supreme Court considered when an insurer must ask an injured employee to submit to an IRE, in order to obtain an automatic change in a claimant's disability status. The Court held:

> The General Assembly . . . has supplemented the traditional approach for securing a reduction in benefits to partial disability by incorporating the concept of an IRE, providing for a self-executing, automatic modification of benefits where an insurer secures a dispositive impairment rating within a defined time period . . . and *affording insurers the opportunity to establish an impairment rating in other time periods to reduce benefits via the traditional administrative process.*

*Id.* at 380, 888 A.2d at 766 (emphasis added).

Subsequently in *Diehl,* the Supreme Court explained the term "the traditional administrative process," referred to in *Gardner,* through which the employer must establish a change in the claimant's disability status based on IRE results obtained more than 60 days after the claimant received 104 weeks of total disability benefits. The Court held:

> If the IRE is requested within the 60–day period and the claimant's impairment rating is less than 50 percent, then the change in disability status is automatic. If, however, the employer requests the IRE outside of the 60–day window and claims that the claimant's impairment rating is less than 50 percent, *the IRE merely serves as evidence that the employer may use at a hearing before a WCJ on the employer's modification petition to establish that the claimant's disability status should be changed from total to partial. In that event, the IRE becomes an item of evidence just as would the results of any medical examination the claimant submitted to at the request of his employer. It is entitled to no more or less weight than the results of any other examination.* The physician who performed the IRE is subject to cross-examination, and *the WCJ must make appropriate credibility findings related to the IRE and the performing physician.* The claimant, obviously, *may* introduce his own evidence regarding his degree of impairment to rebut the IRE findings.

*Diehl,* 607 Pa. at 279, 5 A.3d at 245 (emphasis added).

Under *Diehl,* as a party seeking to modify Claimant's disability status based on the results of the IRE requested after the mandatory 60–day period in Section 306(a.2)(1) of the Act, Employer had the burden of proving the accuracy of Claimant's 22% total whole person permanent impairment rating determined by the IRE physician, Milton J. Klein, D.O., to establish its entitlement to modify Claimant's

disability status. The Majority disregards the *Diehl* holding by failing to treat the results of the IRE performed by Dr. Klein and his testimony as just one item of evidence subject to the WCJ's credibility determinations. The Majority instead finds Employer's evidence as dispositive of the modification and review petitions, as if the IRE were requested within the 60–day period.

Claimant's work injuries included brachial plexus stretch and reflex sympathetic dystrophy (RSD), also known as complex regional pain syndrome, which is "a chronic pain condition that is believed to be the result of dysfunction in the central or peripheral nervous systems." National Institute of Neurological Disorders and Stroke Fact Sheet (Exhibit 3 to Dr. Emilio R. Navarro's Deposition); Reproduced Record (R.R.) at 91a. A "subjective complaint of pain is the hallmark" of RSD. AMA Guides, Fifth Edition at 496. The objective diagnostic criteria for RSD include changes in skin color (mottled or cyanotic), skin temperature and skin texture, edema, soft tissue atrophy, joint stiffness, decreased passive motion, nail changes and hair growth changes. Table 16–16, AMA Guides, Fifth Edition at 496.[1]

Dr. Klein conceded that Claimant complained of "multi-focal, disabling musculoskeletal pain" and "impingement" in the extremity and was taking pain medications and that pain is also one of the symptoms of brachial plexus stretch. Dr. Klein's Deposition at 17 and 20; R.R. 261a and 264a. Dr. Klein also acknowledged that pain is "built into" an impairment rating under the AMA Guides. *Id.* at 18; R.R. at 262a. In his IRE report, however, Dr. Klein did not rate Claimant's impairment resulting RSD and brachial plexus stretch, stating that his examination of Claimant showed "no upper extremity stigmata of RSD such as allodynia, hair loss, joint contractures and shiny atrophic skin." R.R. at 285a. He admitted that people with low back pain and shoulder impingement can have "good days and bad days." *Id.* at 19; R.R. at 263a. He testified: "You are asking if there could be some variation in how [Claimant] is doing and if I examined her a different day, would she be better, would she be worse, that's possible." *Id.*

Claimant's treating physician, Dr. Navarro, testified that Claimant had all of the RSD symptoms: burning pain, increased skin sensitivity, changes in skin color, texture and temperature, changes in nail and hair growth patterns, swelling and stiffness in affected joints and decreased ability to move the affected body part. Dr. Navarro had Claimant show Employer's counsel the changes in skin color and texture, skeletal structure change and atrophy in her hand. *See* Dr. Navarro's Deposition at 19–20; R.R. at 74a–75a. Dr. Navarro testified that Claimant was experiencing ongoing debilitation, atrophy and the spread of symptoms to another extremity, indicating that she was in the late stage 2 or early stage 3 of RSD, and that her prognosis was poor. Dr. Navarro treats Claimant every one or two months.

Accepting Dr. Navarro's testimony regarding his findings of RSD and brachial plexus stretch as more credible than Dr. Klein's conflicting testimony, the WCJ concluded that Dr. Klein's IRE was inaccurate because his impairment rating did

---

1. To determine a degree of impairment from RSD, the following steps must be taken: (1) rate the upper extremity impairment resulting from a loss of motion of each individual joint involved; (2) rate the upper extremity impairment resulting from sensory deficits and pain; (3) combine those ratings; and then (4) convert the upper extremity impairment to whole person impairment using Table 16–3. AMA Guides, Fifth Edition at 496.

not include all of the work injuries. The WCJ stated:

> Dr. Navarro's observations are credible since he, unlike Dr. Klein, who only evaluated [Claimant] on one occasion, had the opportunity to evaluate [her] condition over time and become aware of the fluctuations in her condition. Although Dr. Navarro's notes do not document physical examination findings consistent with [RSD] near the time of Dr. Klein's evaluation, they do show the presence of these findings before and after Dr. Klein's evaluation. Dr. Klein admitted that it was possible for [Claimant] to be better or worse if he saw her on a different date. Dr. Navarro, also, noted that physicians at Cleveland Clinic confirmed his diagnosis and installed the spinal stimulator as treatment for [Claimant's] pain.

WCJ's Finding of Fact No. 8.d.

In a workers' compensation case, credibility determinations and the evaluation of evidentiary weight are within the province of the WCJ as a fact-finder. *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150 (Pa.Cmwlth.2007). It was within the exclusive province of the WCJ to give more weight to Dr. Navarro's testimony over Dr. Klein's conflicting testimony regarding the existence of objective evidence of RSD and brachial plexus stretch. The fact that Dr. Navarro's notes did not indicate Claimant's RSD symptoms near the time of the IRE was just a matter of the weight to be given to his testimony. Because the WCJ's findings are based upon her credibility determinations, they may not be disturbed on appeal. *Lehigh County Vo–Tech Sch. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

The Majority states, however, that "[Dr. Klein] could not assign more than a zero percent impairment to those conditions without violating the AMA Guides" because he "found no objective evidence of either RSD or brachial plexus stretch." Op. at 126. According to the Majority, this Court held in *Barrett v. Workers' Compensation Appeal Board (Sunoco, Inc.)*, 987 A.2d 1280 (Pa.Cmwlth.2010), *appeal denied*, 608 Pa. 670, 13 A.3d 480 (2010), that "an IRE that assigns a zero impairment rating to a work injury does not render the IRE invalid." Op. at 126.

In *Barrett*, the claimant challenged the validity of the IRE, arguing, *inter alia*, that the physician who performed the IRE failed to provide a rating for each one of the work injuries. The IRE physician testified that he could not establish an impairment rating for one of the claimant's work injuries because there was no objective evidence of the injury. Accepting the IRE physician's testimony as credible and rejecting the conflicting testimony of the claimant's medical witness, the WCJ rejected the claimant's challenge to the IRE. In upholding the WCJ's denial of Claimant's challenge to the IRE rating, the Court stated that "[i]n effect, Claimant challenges the weight assigned to [the IRE physician's] testimony, a matter entrusted solely to the WCJ as the factfinder." *Barrett*, 987 A.2d at 1287. The *Barrett* Court merely reaffirmed the WCJ's role as a fact-finder in a challenge to the validity of the impairment rating.

It is well established that each case must be decided on its own facts. *Bates v. Workers' Comp. Appeal Bd. (Titan Constr. Staffing, LLC)*, 878 A.2d 160 (Pa.Cmwlth. 2005). Unlike in *Barrett*, the WCJ in this matter made the credibility determinations against Dr. Klein who performed the IRE. The Majority's position directly contravenes *Diehl* and *Barrett* and compels the WCJ to accept the testimony of the IRE physician. The position taken by the Majority usurps the WCJ's fact-finding func-

tions and renders "the traditional administrative process" adopted in *Gardner* and *Diehl* meaningless. It was Employer's burden to establish the accuracy of the IRE, not Claimant's. Claimant "may" present her own evidence but was not required to do so. *Diehl*, 607 Pa. at 279, 5 A.3d at 245.

Because the WCJ's denial of Employer's review and modification petitions is supported by her credibility determinations, I would affirm the Board's order.

Judges McGINLEY and COHN JUBELIRER join this dissenting opinion.