IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pamela J. Ott,                                    :
                              Petitioner          :
                                                  :
            v.                                    :
                                                  :
Workers' Compensation Appeal                      :
Board (Department of Military &                   :
Veterans Affairs),                                :   No. 1850 C.D. 2015
                              Respondent   :   Submitted:  April 29, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI            FILED: May 20, 2016


            Pamela J. Ott (Claimant) petitions for review of the order of the
Workers' Compensation Appeal Board (Board) affirming the decision of a
workers' compensation judge (WCJ) denying Claimant's review/reinstatement
petitions under the Pennsylvania Workers' Compensation Act (Act)[1] because she
failed to present any medical evidence that her impairment rating had changed or
that she had not reached maximum medical improvement, and because the credible

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

medical evidence did not support an expansion of Claimant's diagnosis. We affirm.

## I.

On January 21, 2002, Claimant sustained an injury while in the course of her employment as a certified nursing assistant with the Commonwealth of Pennsylvania, Military & Veterans Affairs' (Employer) Hollidaysburg Veterans Home. On February 15, 2002, Employer issued a Notice of Compensation Payable (NCP) accepting as compensable an injury described as a cervical spine strain/sprain. Pursuant to the NCP, Claimant received $406.79 in weekly compensation benefits.

On November 3, 2004, a Notice of Change of Workers' Compensation Disability Status was issued modifying Claimant's benefits from temporary total to partial disability status. This change in status was based on a September 25, 2004 impairment rating evaluation (IRE) performed by Dr. Charles Howsare, which concluded that Claimant was at maximum medical improvement (MMI) with a whole body impairment of five percent.

By decision and order dated June 7, 2011, WCJ Vonada granted a review petition and awarded Claimant 90 weeks of benefits for disfigurement resulting from a surgical scar. WCJ Vonada granted a second review petition on March 29, 2012, awarding Claimant 111 weeks of benefits for a second surgical scar.

On August 3, 2012, Claimant, through counsel, filed a reinstatement petition claiming that she had not reached MMI at the time of the IRE as allegedly demonstrated by subsequent surgeries. Claimant simultaneously filed a review petition (together, Petitions) seeking to expand the description of injury to include "jaw/TMJ (temporomandibular joint)/headaches." (Respondent's Brief p. 3).

**II.**

At a hearing before the WCJ, Claimant testified that she was injured when she was punched under the jaw while transferring a resident into his wheelchair. Claimant testified to having injured her neck, with pain into her neck and shoulders, down to her face and arms, as well as headaches. Claimant treated on a continuous basis since 2002 with David Oliver-Smith, M.D. (Dr. Oliver-Smith) and Kornel Lukacs, M.D. (Dr. Lukacs). Dr. Lukacs referred Claimant to N. Ake Nystrom, M.D., P.D. (Dr. Nystrom) who performed two surgical procedures on Claimant on June 10, 2010, and February 24, 2011, respectively. Claimant acknowledged that her condition was slightly better subsequent to the surgeries, but that she still had shrill pain in her shoulders, arm and jaw that gave her headaches on a daily basis.

On cross-examination, Claimant acknowledged that she sustained a prior neck injury in 1994 for which she underwent surgery performed by Dr. Oliver-Smith. Claimant denied having any problem with her jaw or undergoing TMJ implants before her 2002 work injury.

3

In support of her Petitions, Claimant submitted a January 24, 2004 report of Vincent F. Morgan, M.D. (Dr. Morgan), who has a practice in physical medicine and rehabilitation. Dr. Morgan obtained a history from Claimant, reviewed pertinent medical records, and performed a physical examination. Dr. Morgan noted an impression of status-post work-related punch to the face, with cervical strain and mild TMJ dysfunction. Dr. Morgan also noted there was a history of previous cervical and TMJ problems dating to 1994, with a history of a C5/6 fusion, prior cerebral palsy, and continued evidence of symptom magnification. Dr. Morgan noted that Claimant had undergone extensive treatment with only modest benefit, and questioned the appropriateness of the care provided by Dr. Lukacs. Dr. Morgan acknowledged that as of the January 2004 examination, Claimant should not return to a work environment involving combative patients, but was capable of working at a light/medium-duty level. He further opined that no additional active treatment would have any significant bearing on her case.

Claimant also submitted a February 13, 2004 report of Dr. Oliver-Smith in support of her Petitions. Dr. Oliver-Smith performed a neurosurgical consultation, obtained a history, conducted a physical examination of Claimant, and reviewed a lumbar MRI. Dr. Oliver-Smith noted that Claimant had symptoms of cervicalgia, with left cervical radiculopathy. He recommended a more recent cervical MRI be obtained, but otherwise felt Claimant to be at MMI.

In further support of her Petitions, Claimant submitted an April 8, 2009 report of Dr. Nystrom, an orthopedic surgeon specializing in hand surgery.

Dr. Nystrom obtained a history and noted Claimant reported symptoms of ongoing headaches, photophobia, jaw pain and pain radiating into both upper extremities. Dr. Nystrom recommended surgery. He noted that based upon the documentation available to him, there was no indication that Claimant's current symptoms existed prior to the January 21, 2002 injury, that the nature of the symptoms could be explained by the work incident and, therefore, her condition was caused by the work-related injury.

Finally, Claimant submitted the office notes and narrative report of Dr. Lukacs, with whom she treated for both her work injury and a non-related lower back condition. Dr. Lukacs noted that Claimant complained of a significant amount of pain in her high cervical, cranial cervical, mid-cervical base of the neck, inner shoulder and lower back areas. He stated that Claimant had a prior back surgery as well as COPD (chronic obstructive pulmonary disease) and Crohn's disease. Dr. Lukacs' impression was that Claimant had chronic neck/shoulder pain and TMJ problems, as well as headaches, related to the work injury. He noted a continuing recommendation of ongoing injections, together with prescription medications, including muscle relaxers and pain medications. Dr. Lukacs noted that Claimant's symptoms had a slight improvement following surgery; however, he did not believe she was capable of working in any capacity. He acknowledged that overall, Claimant's functional status and capacity had not significantly changed over the course of treatment.

In opposition to the Petitions, Employer submitted an October 12, 2012 independent medical examination (IME) performed by Charles Harvey, D.O.

(Dr. Harvey). Dr. Harvey reviewed Claimant's medical record history and obtained a history directly from Claimant related to her work injury and subsequent symptomology. Dr. Harvey noted that Claimant underwent previous cervical surgery in January of 1995, and that she saw a Dr. Kaczor for problems with her jaw prior to her work injury. Dr. Harvey's impression was that Claimant suffered a hyperextension injury to her cervical spine, which could be categorized as a cervical strain/whiplash injury. Dr. Harvey noted that over the past ten years, Claimant had received a significant amount of unnecessary and inappropriate treatment in the form of local trigger point injections by Dr. Lukacs as well as surgeries and neurolysis. Dr. Harvey further noted that as far back as 2004, Dr. Morgan opined that no additional physical therapy, therapeutic injections, chiropractic treatments, massage treatment or other active treatment would have any significant bearing on Claimant's case. He also noted that Claimant was seen by a Dr. Michael Monson in January 2004 whose impressions included the following:

> I do not see any post-traumatic impairment here. She certainly does not have any post-traumatic findings on her X-ray. Dr. Lukacs has fostered dependence and a sense of illness as opposed to wellness. . . . I do not see any reason why this lady could not return to work because I believe that she is back at her baseline. She tends to magnify or exaggerate her symptoms and complaints.

Finding of Fact (F.F.) Number 12. Dr. Harvey opined that Claimant remained at MMI and had remained so since the time of the IRE in 2004.

After the hearing, counsel for Claimant notified the WCJ that the parties had potentially reached a resolution and would be submitting a petition seeking approval of a compromise and release agreement. This agreement never materialized, and counsel for Claimant subsequently submitted a request for leave to withdraw as counsel. The WCJ granted counsel's withdrawal request as well as an extension to the close of the evidentiary record, and scheduled another hearing for September 25, 2013. At that hearing, Claimant, proceeding *pro se*, testified at length regarding difficulties she had with her injuries and her employer dating back to 1987. Claimant testified that she felt she was discriminated against by Employer, both with respect to disciplinary matters and her work injuries.

On April 18, 2014, the WCJ issued a decision denying Claimant's Petitions, finding that effective September 25, 2004, Claimant had reached MMI with a whole body impairment of five percent. The WCJ noted that at no time from 2004 onward was any medical evidence presented that Claimant's impairment rating had changed or that she had not reached maximum medical improvement. Citing *Johnson v. Workers' Compensation Appeal Board (Sealy Components Group)*, 982 A.2d 1253 (Pa. Cmwlth. 2009), *appeal denied,* 996 A.2d 493 (Pa. 2010), the WCJ explained that if an employee does not appeal the unilateral change in status during the 60 days after notification of modification based on an IRE is given, the employee may only seek to review the IRE determination upon showing that his or her impairment rating is equal to or greater than 50 percent impairment. *See also* Section 306(a.2)(4) of the Act, 77 P.S. §511.2(4), added by the Act of June 24, 1996, P.L. 350. The WCJ held that no such medical evidence existed in this case. On the contrary, all of the medical

7

reports and records – including those of Claimant's own treating physician – indicated that there had not been any appreciable change in Claimant's condition over the years. Citing *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Pickford)*, 29 A.3d 120 (Pa. Cmwlth. 2011), the WCJ also noted that Claimant's evidence that she underwent surgeries after the completion of the IRE were irrelevant to the issue of the degree of her impairment. Because she failed to meet her burden of proof, Claimant's reinstatement petition was denied.

With respect to Claimant's petition to review the description of injury, the WCJ found the opinions of Dr. Morgan and Dr. Harvey to be credible and persuasive and they were accepted as controlling. The WCJ found both doctors' impressions were very similar and corroborative with respect to the diagnosis of a cervical sprain/strain. Both Dr. Morgan and Dr. Harvey noted that Claimant had a prior history of TMJ dysfunction dating back to 1994, and Dr. Morgan noted continued evidence of symptom magnification. The WCJ also found that Dr. Oliver-Smith's diagnosis of cervicalgia was consistent with the diagnosis of cervical sprain/strain, and noted that Dr. Oliver-Smith considered Claimant to be at MMI at approximately the same time as the IRE.

The WCJ found the reports and opinions of Dr. Lukacs and Dr. Nystrom to be incredible and, therefore, they were rejected. The WCJ noted that neither Dr. Lukacs nor Dr. Nystrom mentioned having had access to Claimant's medical record history prior to her work injury. The WCJ also noted that Dr. Nystrom based his opinion that Claimant's symptoms or diagnosis were causally related to her work injury on a simple perceived temporal relationship. Citing

*Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800 (Pa. 1985), the WCJ explained that a temporal relationship between the onset of asserted symptoms and an alleged work injury is not a sufficiently competent medical opinion to establish an unequivocal causal relationship. The ongoing and extensive treatment of Claimant by Dr. Lukacs was noted by Dr. Morgan and Dr. Harvey to have been of little benefit and of questionable necessity or appropriateness. For these reasons, the WCJ denied Claimant's petition to review the description of injury.[2]

### III.

Claimant appealed to the Board arguing, *inter alia*, that Employer engaged in ongoing discrimination and retaliation based on her status as an individual with a disability. She requested a new IME, disputed the relevance of her pre-existing cerebral palsy in the context of her workers' compensation litigation, expressed dissatisfaction with her former counsel's representation, and questioned the fairness and impartiality of the litigation.

The Board found no error in the WCJ denying an expansion of the description of injury. The WCJ accepted as credible the opinions of Dr. Morgan and Dr. Harvey, limiting the work-related injury to that which was accepted by the NCP. The Board noted that the WCJ has complete authority over questions of

---

[2] The WCJ found Claimant's testimony "to be credible to the extent that no doctor has asserted that she has fully recovered from her work injury, or is capable of returning to work without restrictions, or that there is no basis whatsoever for her ongoing pain complaints." F.F. Number 28(f).

9

credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383 (Pa. Cmwlth. 1995). Claimant had the burden of providing additional injuries and failed to meet this burden. The Board determined no error in the WCJ's finding that Claimant did not present any evidence to establish that her degree of impairment was equal to or greater than 50 percent.[3] For these reasons, the Board affirmed the WCJ's denial of Claimant's Petitions.

## IV.

In this appeal,[4] Claimant appears to claim that there is not substantial evidence to support the WCJ's findings. We disagree. The WCJ found the opinions of Dr. Morgan and Dr. Harvey to be credible and persuasive with respect to the diagnosis of a cervical sprain/strain, and Dr. Oliver-Smith's opinion was consistent with this diagnosis. Both Dr. Morgan and Dr. Harvey noted that Claimant had a history of TMJ dysfunction dating back eight years prior to her work injury. The WCJ also found the reports and opinions of Dr. Lukacs and Dr. Nystrom to be incredible, noting that neither doctor had access to Claimant's

---

[3] Claimant did not raise the issue of the IRE or her change of disability status to partial in her appeal; however, the Board addressed the issue for the sake of judicial economy.

[4] In a workers' compensation proceeding, this Court's scope of review is limited to determining whether errors of law were committed, whether constitutional rights were violated, and whether necessary findings of fact are supported by substantial evidence. *Roundtree v. Workers' Compensation Appeal Board (City of Philadelphia)*, 116 A.3d 140, 143 n.4 (Pa. Cmwlth. 2015). "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. . . . In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

medical record history prior to her work injury. "The WCJ, as the ultimate fact-finder in workers' compensation cases, 'has exclusive province over questions of credibility and evidentiary weight.'" *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). We are bound by these credibility determinations and cannot overturn them on appeal. "Moreover, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *A & J Builders, Inc.*, 78 A.3d at 1238. There is ample evidence in the record to support the WCJ's findings with respect to the description of injury, and we discern no error in the denial of Claimant's review petition.

With respect to Claimant's reinstatement petition, we note that a claimant generally has two opportunities to appeal a change in his or her disability status. *See* Section 306(a.2) of the Act, 77 P.S. §511.2. A claimant has an immediate appeal pursuant to Section 306(a.2)(2) of the Act, which "provides that no reduction in the employee's disability status shall be made until 60 days' notice of modification is given." *Johnson*, 982 A.2d at 1257. Claimant, in this case, did not file an immediate appeal. After the 60-day notice period expires, the Act provides a claimant the opportunity to challenge the change of his or her disability status at any point during the 500-week period of partial disability; however, a claimant must then provide an IRE determination indicating that the claimant has an impairment rating in excess of 50 percent. *Id.* at 1258. In this case, the WCJ found that Claimant failed to present such an IRE or *any* credible medical evidence

that her impairment rating was equal to or greater than 50 percent. In fact, there is no credible evidence in this case to contradict the September 25, 2004 IRE finding that Claimant had reached maximum medical improvement with a whole body impairment of five percent. As such, the WCJ did not err in denying Claimant's reinstatement petition.

Accordingly, the Board's order is affirmed.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pamela J. Ott,                          :
                    Petitioner          :
                                        :
        v.                              :
                                        :
Workers' Compensation  Appeal           :
Board (Department of Military &         :
Veterans Affairs),                      :
                    Respondent  :   No. 1850 C.D. 2015


**O R D E R**


AND NOW, this 20<u>th</u> day of  May, 2016, the order of the Workers'

Compensation Appeal Board dated August 4, 2015, at No. A14-0516, is affirmed.


 

 

DAN PELLEGRINI, Senior Judge