**COMMONWEALTH of Pennsylvania/DPW–LOYSVILLE YOUTH CENTER and Inservco Insurance Services, Inc., Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SLESSLER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 20, 2014.

Decided Oct. 30, 2014.

---

Sheri B. Friedman, Scranton, for petitioners.

William A. Kovalcik, Frackville, for respondent.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and P. KEVIN BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Petitioners, Commonwealth of Pennsylvania, Department of Public Welfare, Loysville Youth Center and Inservco Insurance Services, Inc. (hereinafter referred to as Employer), petition for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed a Workers' Compensation Judge's (WCJ) decision denying Employer's modification petition, seeking to change the workers' compensation benefit status of Dallas Slessler (Claimant) from total to partial based upon the results of an impairment rating evaluation (IRE). The Board reversed the WCJ's determination that Claimant also suffers from major depression, panic disorder, and status post C5–6 fusion, arising from his work-related injuries. We vacate in part and remand the matter to the Board.

On September 14, 2003, Claimant sustained a work-related injury during the course of his employment. The WCJ described the injury as follows:

> [T]he Claimant suffered a severe attack while in the course of his employment with the Employer, when a resident brought his legs down into the Claimant's side. He and four other individuals were trying to restrain the resident, when the Claimant fell and the resident and the other workers fell on the Claimant. The resident broke the Claimant's back and ribs, and he injured a disc in his neck for which he subsequently had a fusion.

(Finding of Fact (F.F.) no. 12.) On October 1, 2003, Employer issued a notice of compensation payable (NCP) that identified Claimant's work-related injuries as "neck and right Achilles tendon strain." (Reproduced Record (R.R.) at 340a.) In November 2006, the WCJ issued a decision, amending the NCP to include Post Traumatic Stress Disorder (PTSD) and chronic pain.

On July 6, 2009, Claimant filed a medical review petition and a penalty petition. Claimant based these petitions on his claim that Employer failed to pay for a medical expense (adjustable bed). On August 9, 2009, Employer filed its modification petition. Employer asserted that a November 18, 2008 IRE of Claimant by Michael Wolk, M.D., indicated an impairment rating of 8% and, thereby, supported a change in Claimant's benefits from total to partial. (R.R. at 22a.) On January 10, 2010, Claimant filed a utilization review (UR) petition. The UR petition sought to challenge a UR determination of Dennis W. Ivill, M.D., who determined that Claimant's treatment with Myra B. Tolan, M.D., a pain specialist, was unreasonable and unnecessary.

The WCJ held several hearings, during which Claimant testified before the WCJ for the purpose of his medical review petition. Claimant also submitted the deposition testimony of Dr. Tolan for the purpose of Claimant's challenge to the UR determination. Employer submitted the deposition testimony of Dr. Wolk in support of its modification petition.

Claimant testified that he sees Dr. Longo once a month. Dr. Longo provides counseling and therapy on how to deal with pain on a day-to-day basis. He sees Joyce Chivas, a medical social worker/licensed social worker, once a week. Claimant testified that he sees Dr. Tolan for his pain. Dr. Tolan gives Claimant Botox in-

jections several times per year. Dr. Tolan prescribed a particular type of bed for the purpose of addressing Claimant's pain. Claimant testified generally regarding the nature of his pain and the medication he takes in response to his pain. He takes some pain medication for conditions other than his work injury. Claimant testified that, in addition to his pain medication, he attends physical therapy with John Foster two times per week. Mr. Foster provides "myofacial release" through deep massage and applies heat and sometimes electronic stimulus, which helps loosen the muscles.

With regard to his PTSD, Claimant testified that he has nightmares, anger outbursts, dryness of mouth, an "overwhelming" sense that triggers depression and anxiety, more frequent panic attacks than before he had PTSD, and pain triggered by PTSD. Claimant testified that Dr. Maue, a psychiatrist, prescribes Remerion for his PTSD. Claimant testified as follows:

> I would not be able to sustain a job at a position in doing anything physical. With the P.T.S.D and the anger outburst that I get I'm not too sure a manager or somebody above me would have problems with that. Because of the other reactions I get with not being able to sleep, I wouldn't be able to stay awake. My anxiety I get panic attacks, serious panic attacks where I get overwhelmed and I freeze and I—there are times when I am just potentially frozen or frozen and I can't move. I have difficulty breathing and I have to do breathing exercises to come out of that. The—the effect that it has on me debilitates me to the point where I am frozen, I can't perform. I can't function. My mind doesn't work the way it is supposed to. It is hard to describe the effect

. . . .

(R.R. at 304a–305a.)

Claimant offered, over Employer's objection, the deposition testimony of David J. Longo, Ph.D., a psychologist. For the purposes of expert qualification, Dr. Longo testified that he has a Bachelor's of Science degree in psychology, a Master's of Science degree in clinical psychology, and a Doctor of Philosophy degree in clinical psychology with a minor degree in behavioral medicine. Dr. Longo testified that he is a licensed psychologist and a certified neuropsychologist. Pertinently here, Dr. Longo testified that he is familiar with the American Medical Association Guides to the Evaluation of Permanent Impairment (AMA Guides), which he uses in preparation for depositions. (R.R. at 90a.) On cross-examination relating to his qualifications, Dr. Longo testified that he is not licensed to practice medicine in the Commonwealth and is not certified by any American medical or osteopathic specialist board. Dr. Longo testified that he does not meet the certification and training requirements established by the Department of Labor and Industry (L & I) for performing IREs. Additionally, Dr. Longo testified that he was not trained or certified to use the Sixth Edition of the AMA Guides. Employer objected to Dr. Longo's testimony based upon its contention that he could not be qualified as an expert, because he did not satisfy L & I's qualification requirements for the performance of impairment rating evaluations.

Dr. Longo testified that he began treating Claimant in April 2005. He conducted a test known as a McGill Pain Inventory, which he described as the "gold standard to assess the patient['s] perception of pain." (R.R. at 95a.) Based upon his testing and examination of Claimant, Dr. Longo testified that he diagnosed Claimant with

chronic pain associated with both psychological factors and general medical conditions, major depression, [PTSD], panic disorder, and then from the review of his records, medical records, he had been status post C5–C6 fusion. He was diagnosed with sympathetically-maintained pain, myofascial pain syndrome with numerous trigger points, mechanical low back syndrome, spinal stenosis, degenerative disc disease, degenerative joint disease.

(February 1, 2010 Deposition of Dr. Longo at p. 17.)[1] Dr. Longo also testified that although Claimant had major depression and panic disorder before he sustained his work-related injury, the injury aggravated those conditions and made them more severe. (R.R. at 96a.) Dr. Longo testified that over the years that he has treated Claimant he conducted condition-specific tests aimed to assess, among other psychological conditions, anxiety, depression, and PTSD. Dr. Longo testified that Claimant's results were consistently above the clinically significant thresholds for those tests, meaning that Claimant had "severe disorder or dysfunction." (R.R. at 99a.) Claimant scored ten on the McGill Pain Inventory assessment. According to Dr. Longo, this result means that there is little likelihood that Claimant would recover from his pain condition. (R.R. at 102a.)

Dr. Longo also testified regarding his own IRE of Claimant and his review of the IRE performed by Dr. Wolk on behalf of Employer. Specifically, Dr. Longo testified as follows with regard to his methods for evaluating Claimant's impairment rating:

My impairment rating is based on chapter, I believe it's 14 of mental health and behavioral dysfunction and—mental and behavioral disordering in the impairment guide's sixth edition. And I used the measures, the GAF, the BPRS and the PIRS forms. And my impressions from those is from the long history of treatment and also the use of my normative-based questionnaires I've just reviewed. My normative-based questionnaires, the validity coefficients on those range from 8.8 to 9. The validity coefficients on the GAF is about .4. That's inter-rater reliability. And validity of .3. The BPRS has no reliability or validity statistics, and the PIRS also has that.

(R.R. at 108a–109a.)

Dr. Longo also acknowledged that, after reviewing Dr. Wolk's deposition, he realized that some of his impairment rating calculations in his IRE were incorrect. (R.R. at 109a–110a.) Specifically, Dr. Longo testified that he erroneously used the mode of various numerical values rather than the median. (R.R. at 110a.) Consequently, Dr. Longo testified that the corrected mental impairment rating, based upon a combination of his mental rating and Dr. Wolk's physical impairment rating (which was 8%) was 50% impairment. (*Id.*) Additionally, Dr. Longo testified that he "should have used defined values in appendix A, page 604. And the larger value as mine—as Dr. Wolk said, should be 50. And his physical, which is 8—if you look at that table, according to mine and Dr. Wolk, his impairment rating should essentially be 54 percent." (*Id.*) Dr. Longo also testified as follows:

Q. Okay. So based upon your performing of this impairment rating evaluation, your review of Dr. Wolk's testimony and review of the American Medical Association Guide to the Evaluation of

---

1. Although Employer included Dr. Longo's deposition testimony in the reproduced record, page 17 is missing. Thus, we have relied on the copy of the transcript in the certified record.

Permanent Impairment, do you have an opinion based upon a reasonable psychological certainty as to what his mental impairment is?

A. His mental impairment is 50 percent.

Q. And under the same assumptions and criteria, do you have an overall score that you believe is appropriate for him?

A. Yes. The appropriate score, thank you to Dr. Wolk, should be 54 percent.

(R.R. at 110a–111a.)

Employer presented the deposition testimony of Dr. Wolk, a licensed medical doctor with board certifications in physical medicine and rehabilitation, spinal cord injuries, and independent medical examinations. (R.R. at 170a.) Dr. Wolk testified that he has met L & I's certification and training requirements for performing IREs. (R.R. at 171a.) Dr. Wolk testified that he performed the IRE for the following diagnoses: left-sided rib cage injury, neck injury, right Achilles tendon strain, PTSD, and chronic pain. (R.R. at 186a.) Dr. Wolk testified that he reviewed Claimant's medical history, including all reports, tests, and Dr. Longo's IRE. Dr. Wolk testified that, other than Claimant's cervical spine condition, which he concluded constituted an impairment rating of 8%, Claimant's other physical conditions did not warrant additional impairment rating. In reaching this conclusion, Dr. Wolk included Claimant's chronic pain condition as well as his physical condition. (R.R. at 184a–185a, 187a.) With regard to Claimant's pain issues, Dr. Wolk testified that Claimant's pain associated with his cervical spine "had already been incorporated into the" rating estimate. (R.R. at 185a.) With regard to Claimant's PTSD, Dr. Wolk testified that he used a median score based upon three numerical figures for "PIRS, the GAF and the BPRS," which, in

his opinion produced an impairment rating of 0 (scores of 0, 0, and 20 equate to a mathematical median score of 0). (R.R. at 186a.)

Finally, Dr. Wolk also testified that, after reviewing Dr. Longo's IRE, he did not believe that Dr. Longo understood how to use the AMA Guides. (R.R. at 191a.) Dr. Wolk opined that Dr. Longo did not "know how to apply the grade modifiers because he's using Magill pain evaluations in the PDQ for the functional history, as well as EMG biofeedback assessments. That's inaccurate to do." (*Id.*) Dr. Wolk also testified that he lacked supporting documentation for Dr. Longo's scores for grading Claimant's PTSD, when viewed in comparison to his own scores for Claimant's PTSD. Moreover, in reviewing the three pertinent component scores for the PTSD rating obtained by Dr. Longo, he pointed out the fact that Dr. Longo failed to identify the mathematical median score of those numbers. (R.R. at 192a.) Finally, with regard to Dr. Longo's combined physical/mental impairment rating, Dr. Wolk testified that, even if Dr. Longo's initial mental impairment rating of 45% for mental/behavioral impairment (presumably that established by Dr. Longo in his IRE rather than in his deposition) and 8% for physical impairment (as obtained by Dr. Wolk and applied by Dr. Longo), the result would be 49% using the applicable "Combined Values Table." (*Id.*)

In his decision, the WCJ overruled Employer's objections to the deposition testimony of Dr. Longo. With regard to Employer's competency objection, the WCJ rejected Employer's reliance upon regulations pertinent to the selection of physicians for the performance of IREs, 34 Pa.Code § 123.103(a). The WCJ concluded that Dr. Longo's opinion testimony was admissible, but qualified the significance of his opinion, *e.g.*, the weight he would

give the opinion, based upon the fact that Dr. Longo was a psychologist and not a Department-certified impairment rating evaluator. The WCJ reasoned that due process concerns provided support for accepting Dr. Longo's testimony in response to the testimony of a Department-certified impairment rating evaluator such as Dr. Wolk. The WCJ took judicial notice of the fact that no certified IRE physicians live in the same county as Claimant or in two neighboring counties. The WCJ reasoned that requiring Claimant to obtain the services of a distant IRE physician could be financially prohibitive and prevent Claimant from presenting testimony from a treating physician on IREs. The WCJ noted that although the regulations provide for the appointment of IRE-certified physicians, the regulations do not address the competency of a non-certified physician to testify regarding an impairment rating evaluation. The WCJ apparently reasoned that although Dr. Longo was neither certified nor a medical physician, the AMA Guides specifically refer to the use of the guidelines by both psychiatrists and psychologists, and, therefore, the AMA Guides anticipated that both types of professionals would use the guidelines. (WCJ Decision at 17.) The WCJ, however, limited the accepted competency of Dr. Longo to his opinion regarding Claimant's impairments flowing from his chronic pain and psychological conditions. (*Id.* at 17.)

The WCJ concluded that Dr. Wolk's testimony was incompetent, based upon the WCJ's observation that Dr. Wolk, while making references to the mental and be-havioral guidelines applicable to a mental impairment rating, failed to provide testimony indicating that "he adequately considered all of the guidelines and tables set forth in the Guides, in finding that the Claimant suffered from an eight percent whole person impairment." (WCJ decision at 15–16.) The WCJ rejected Dr. Wolk's 8% impairment rating, based in part upon his observation that Dr. Wolk did not demonstrate that he considered all relevant guidelines and tables in the AMA Guide. Thus, the WCJ concluded that Employer failed to satisfy its burden to demonstrate that Claimant's impairment is sufficiently low to provide support for Employer's modification petition, seeking a change from total to partial disability. The WCJ, however, also concluded that Claimant failed to establish that his impairment rating was between 53% and 58%.[2] The WCJ also unilaterally determined that Claimant also suffers from major depression, panic disorder, and status post C5–6 fusion, as a consequence of Claimant's work-related injuries.

Employer appealed to the Board, challenging the WCJ's conclusions regarding whether Employer satisfied its burden to prove that Claimant's reduced impairment warrants a reduction in his status to partial disability and the conclusion that Claimant has the additional work-related conditions mentioned above. The Board affirmed the WCJ's decision regarding Employer's modification petition, but reversed the WCJ's conclusions regarding Claimant's injuries. In this appeal,[3] the

---

2. The WCJ also denied Claimant's utilization review petition, penalty petition, and medical review petition, but none of those aspects of the WCJ's order are before us in this appeal.

3. This Court's review of the Board's order is limited to considering whether necessary factual findings are supported by substantial evidence and whether any errors of law or con-stitutional violations were committed. 2 Pa. C.S. § 704. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a finding. *Mrs. Smith's Frozen Foods Co. v. Workmen's Comp. Appeal Bd. (Clouser)*, 114 Pa.Cmwlth. 382, 539 A.2d 11, 14 (1988). Additionally, in accordance with our Supreme Court's decision in *Leon E. Wintermyer, Inc. v. Workers' Com-*

sole issue Employer raises is whether the Board erred in affirming the WCJ's decision regarding Claimant's impairment rating.

In challenging the Board's order, Employer contends that the Board erred in two respects. Employer asserts that the WCJ erred in concluding that Dr. Wolk did not provide competent testimony. Employer contends that the WCJ's competency ruling actually amounted to an improper substitution of the WCJ's opinion for that of an expert's, Dr. Wolk's, when the WCJ is not qualified to render an expert opinion.[4] Employer also contends that if Dr. Wolk's opinion was competent, contrary to the WCJ's decision, then the WCJ erred in relying upon the opinion of Dr. Longo to refute Dr. Wolk's opinion, because Dr. Longo is not a medical practitioner or certified to perform IREs. In other words, Employer contends that Dr. Wolk's testimony satisfied its burden of proof and persuasion, and Claimant failed to present evidence that supports the WCJ's pertinent factual findings.

Section 306(a.2)(1) of the Workers' Compensation Act (Act)[5] provides employers with the right to seek modification of a claimant's benefits, from total to partial, based upon the results of an IRE indicating that a claimant's "impairment" is less than 50%. The Act defines the term "impairment" as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent."[6] Section

306(a.2)(1) of the Act provides employers with the right to require a claimant who has received total disability benefits for a period of 104 weeks to submit to an IRE. If an employer makes such a demand within 60 days after the 104–week period has elapsed, and the IRE indicates that the impairment is less than 50%, a worker's compensation judge may grant a modification based solely on the results of the IRE as a matter of course. If an employer, as in this case, requests a claimant to submit to an IRE after the 60–day window, an employer may still seek modification of benefits from total to partial based on the IRE, but the normal administrative process for obtaining a modification of benefits applies, and an IRE becomes simply "an item of evidence just as would the results of any medical examination." *Diehl v. Workers' Comp. Appeal Bd. (I.A. Constr.)*, 607 Pa. 254, 5 A.3d 230, 244 (2010). As in all adjudicatory matters under the Act, the worker's compensation judge must make credibility determinations relating to an employer's IRE and supporting expert medical evidence, and a claimant may introduce evidence relevant to the issue of the degree of impairment from which he continues to suffer.

■ Because Employer had the burden to demonstrate that Claimant's impairment rating was below 50%, an appropriate issue to resolve initially is the question of whether the WCJ erred in concluding that Dr. Wolk's testimony was incompetent. The Board majority did not squarely

---

*pensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), we may also review a WCJ's decision for capricious disregard of material, competent evidence as a component of our appellate review when a party has properly presented such an issue to the Court. *Wintermyer*, 812 A.2d at 487.

4. The Board's majority prompted the Chairman of the Board, Alfonso Frioni, Jr., to file a dissent, in which that member expressed the

belief that the WCJ improperly substituted his own opinion for that of Dr. Wolk.

5. Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2.

6. Section 306(a.2)(8)(i) of the Act, 77 P.S. § 511.2(8)(i).

address this issue. While acknowledging that the WCJ determined Dr. Wolk's testimony is not competent, the Board's analysis appears to focus on its conclusion that the WCJ found the testimony insufficiently credible to sustain Employer's evidentiary burden. The WCJ set forth a discussion of the applicable statutes and regulations regarding factors that a physician may consider in performing an IRE. The WCJ identified the AMA Guides and noted that the AMA Guides contain specific guidelines and examples that are applicable or helpful for a physician in arriving at a rating regarding mental and behavioral disorders. The WCJ reasoned that

> [a]lthough Dr. Wolk did make some oblique references to the Guides, and specifically to Chapter 14, in both his testimony and a brief supplemental report, his testimony does not establish that he adequately considered all of the guidelines and tables set forth in the Guides, in finding that the Claimant suffered from an eight percent whole person impairment. Therefore, his opinion has an insufficient foundation in this record, and is incompetent, as a matter of law.

(WCJ Decision at 15; footnote omitted.) In support of this conclusion, the WCJ cited this Court's decision in *Lookout Volunteer Fire Company v. Workmen's Compensation Appeal Board (Savercool)*, 53 Pa.Cmwlth. 528, 418 A.2d 802 (1980). In that decision, however, we concluded that a medical expert's opinion was not competent ·to support a workers' compensation judge's findings because the expert's testimony indicated that he was not familiar with the facts surrounding a claimant's injury. In this case, the WCJ based his competency decision not on an alleged lack of understanding on the part of Dr. Wolk of *facts* pertinent to Claimant's condition, but rather on the WCJ's understanding of the means by which Dr. Wolk applied the guidelines in the AMA Guides to the facts.

Any such failure is a matter for an opposing party to establish during cross-examination of a witness, and any failure of a medical expert to apply pertinent guidelines would affect the credibility of such a witness rather than his competency. Accordingly, to the extent that the WCJ based his decision on a determination that Dr. Wolk's testimony was incompetent, we conclude that the WCJ erred as a matter of law.

■ The WCJ's decision, however, appears to rest additionally on his determination that Dr. Longo's opinion was entitled to greater weight than Dr. Wolk's. In other words, although the WCJ spoke in terms of competency, he actually considered the credibility of the witnesses and weighed the evidence. We view the WCJ as basing his decision, therefore, alternatively on the comparative credited value of the opinions of both Dr. Wolk and Dr. Longo. Consequently, we must consider Employer's second issue—*i.e.*, whether the WCJ erred in concluding that Dr. Longo's opinion was competent to support the WCJ's necessary factual findings. In order to evaluate the merits of this issue, we first recite the pertinent regulatory provisions from 34 Pa.Code § 123.103, which relates to the qualifications of physicians performing IREs:

§ 123.103. Physicians

(a) Physicians performing IREs shall:

> (1) Be licensed in this Commonwealth and certified by an American Board of Medical Specialties-approved board or its osteopathic equivalent.

> (2) Be active in clinical practice at least 20 hours per week.

(b) For purposes of this subchapter, the phrase "active in clinical practice" means the act of providing preventive care and the evaluation, treatment and manage-

ment of medical conditions of patients on an ongoing basis.

(c) Physicians chosen by employees to perform IREs, for purposes of appealing a previous adjustment of benefit status, shall possess the qualifications in subsection (a) and shall be active in clinical practice as specified in subsection (b).

(d) In addition to the requirements of subsection (a) and (b), physicians designated by the Department to perform IREs shall meet training and certification requirements which may include, but are not limited to, one or more of the following:

> (1) Required attendance at a Departmentally approved training course on the performance of evaluations under the AMA "Guides to the Evaluation of Permanent Impairment."
>
> (2) Certification upon passage of a Departmentally approved examination on the AMA "Guides to the Evaluation of Permanent Impairment."
>
> (3) Other requirements as approved by the Department.

Another regulation, 34 Pa.Code § 123.105; also offers insight into this issue and provides:

§ 123.105. Impairment rating determination

(a) When properly requested under § 123.102 (relating to IRE requests), an IRE shall be conducted in all cases and an impairment rating determination must result under the most recent edition of the AMA "Guides to the Evaluation of Permanent Impairment."

(b) To ascertain an accurate percentage of the employee's whole body impairment, when the evaluating physician determines that the compensable injury incorporates more than one pa-

thology, *the evaluating physician may refer the employee to one or more physicians specializing in the specific pathologies which constitute the compensable injury. Any physician chosen by the evaluating physician to assist in ascertaining the percentage of whole body impairment shall possess the qualifications as specified in § 123.103(a) and (b)* (relating to physicians). The referring physician remains responsible for determining the whole body impairment rating of the employee.

(Emphasis added.)

 On their face, these provisions do not specifically require a claimant who is acting in a defensive posture in an employer's petition for modification of benefits to offer evidence of an expert who satisfies the requirements of these IRE regulations. Rather, the regulations address situations in which insurers (or employers) and claimants initiate IRE proceedings. Also, as mentioned above, when an employer seeks a modification of benefits outside the initial 60–day window, an IRE demonstrating that a claimant has an impairment rating below fifty percent will not automatically result in a change in benefits from total to partial; rather, "the IRE merely serves as evidence that the employer may use at a hearing before a WCJ on the employer's modification petition." *Diehl,* 5 A.3d at 245 (Pa.2010).

Thus, the question in this case is whether Dr. Longo's testimony is competent and valid for the purpose of responding to Employer's evidence, which happens to include evidence relating to Dr. Wolk's IRE results. Unlike a claim petition, where we have held that a psychologist's expert opinion regarding a claimant's work-related mental injury is competent,[7] in this case

---

**7.** *See Serrano v. Workmen's Comp. Appeal Bd. (Chain Bike Corp.),* 123 Pa.Cmwlth. 220, 553

we are addressing the evidence submitted by a claimant in response to a modification petition based upon an IRE. The discrete question involved concerning the character of the evidence submitted in a modification petition based upon IRE evidence arises from the rating process set forth by the General Assembly, as further refined by the Department of Labor and Industry in the IRE regulations. Both the statutory provisions and the regulations clearly anticipate that only medical doctors may render rating evaluations when performing IREs, either for employers or claimants. Thus, although we have held that psychologists may provide competent testimony in the claim petition context, and although our Supreme Court has held that IRE reports become simply an item of evidence in an IRE-based modification proceeding, we conclude that because that evidence is generated through a process requiring evaluation by a medical professional, a claimant seeking to respond to such evidence (at least where the evidence is competent) must offer evidence of similar quality and character—*i.e.,* competent opinion evidence from a medical professional.

▮ Consequently, we conclude that the General Assembly also intended that where a claimant seeks to rebut competent IRE evidence, he or she must present evidence of similar character—*i.e.,* evidence of rating evaluations performed only by those persons the General Assembly has deemed qualified to engage in rating evaluations—osteopathic or medical doctors.[8] The WCJ and Board, therefore, erred in concluding that the testimony of a non-medical expert (in this case a psychologist) regarding the rating of a claimant's condition is competent for the purpose of rebutting competent IRE evidence submitted by an employer.

This conclusion is consistent with our decision in *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Pickford)*, 29 A.3d 120 (Pa.Cmwlth. 2011). In *Westmoreland,* a claimant presented the testimony of a non-IRE-certified *physician.* We opined that a

> rebuttal IRE, proffering an impairment rating above 50 percent, may be evidence most persuasive to counter the IRE done at the employer's request. However, the claimant's expert may also successfully challenge the reliability of the IRE by pinpointing errors of fact or errors in the IRE physician's application of the AMA Guides. This is not to say that a claimant must engage an expert

A.2d 1025, 1027 (1989); *McDonough v. Workmen's Comp. Appeal Bd. (Cmwlth.),* 80 Pa. Cmwlth. 1, 470 A.2d 1099 (1984) (testimony of clinical psychologists can constitute unequivocal evidence of mental illness in context of claim petition).

8. We also disagree with the WCJ's conclusions that he could take judicial notice of a lack of state-certified IRE professionals in Claimant's geographical area and that this possible factual element resulted in a compromise of Claimant's due process interests. The regulations require a medical doctor to be certified by the Department only when an employer is requesting a claimant to submit to an initial IRE. The regulations do not require a claimant to obtain an .IRE from a state-certified physician, but they do require

IREs to be performed by medical or osteopathic practitioners. Thus, a claimant need not obtain state-certified doctors to testify regarding an IRE. We also disagree with the WCJ's conclusion that, because the AMA Guides anticipate that non-medical psychologists will consult and use the AMA Guides for diagnosis and treatment purposes, in these administrative proceedings under the Act, workers' compensation judges can accept non-medical testimony to support a claimant's position. We are constrained not by the terms of the AMA Guides, but rather by the Act and applicable regulations. The fact that the AMA Guides anticipate that non-medical professionals may use the guidelines does not alter the statutory and regulatory landscape.

to defend against an IRE; the claimant may limit his defense to cross-examination of the IRE physician.

*Id.* at 128. Because we concluded that Dr. Longo's testimony was not competent, the WCJ, when considering Dr. Wolk's competency and credibility, could consider only Dr. Wolk's testimony and Claimant's cross-examination of him.

The focus of Claimant's cross-examination of Dr. Wolk, however, was on Dr. Wolk's use of the mathematical median score among the three individual scores the Guides require physicians to use in determining the "Mental and Behavioral Disorder" rating for Claimant. Although Claimant's cross-examination touched upon Dr. Wolk's use of the Guides, Claimant posed no questions and obtained no responses that would appear to support the WCJ's finding that Dr. Wolk did not apply the Guides in the manner prescribed by the Guides. On cross-examination, Dr. Wolk did not refute any of the conditions that have been identified as work-related. He testified, in accordance with the IRE protocol, as to Claimant's conditions *at the time he examined him. See Westmoreland.* Thus, we are uncertain as to whether any of Dr. Wolk's cross-examination testimony would be sufficient to rebut the findings of Dr. Wolk's IRE.

■ A WCJ may reject competent evidence offered by an employer in support of a modification petition, but when a claimant does not produce any competent evidence in response or fails to provide such evidence through cross-examination, a WCJ must articulate the reasons why he is rejecting the evidence. *Wintermyer.* Here, as suggested above, the WCJ offered a specific reason why he did not believe Dr. Wolk's testimony and IRE report. The WCJ opined that Dr. Wolk failed to demonstrate that he considered all of the AMA Guides guidelines in con-

cluding that Claimant suffered only from an 8% whole person impairment. The WCJ, however, did not specify any record evidence upon which he may have relied in basing his decision on this alleged lapse. Thus, we are unable to engage in effective appellate review.

■ We believe, therefore, that a remand is in order. On remand, the WCJ should not consider the testimony of Dr. Longo and should issue new findings regarding Dr. Wolk's credibility and competency with sufficient reference to actual and competent *evidentiary* support for his new findings regarding Dr. Wolk's competency and credibility, or lack thereof. The WCJ should base those new findings not on his opinion of how physicians should properly apply the AMA Guides, but on *competent* evidence in the record that supports or challenges the reliability of Dr. Wolk's IRE and testimony concerning the AMA Guides. We reiterate that the WCJ may not use his own medical opinion regarding whether Dr. Wolk complied satisfactorily with the AMA Guides. It appears that the WCJ may have based both his opinions regarding Dr. Wolk's competency and his credibility determination as reflected in Finding of Fact no. 17 on his own medical opinion regarding the propriety of Dr. Wolk's application of the AMA Guides.

Accordingly, we will vacate the Board's order to the extent it affirmed the WCJ's order denying Employer's modification petition based on Claimant's impairment rating, and we remand this matter to the Board with instruction that it remand the matter to the WCJ for the issuance of a new decision and order in accordance with this opinion.

### *ORDER*

AND NOW, this 30th day of October, 2014, the order of the Workers' Compensa-

tion Appeal Board (Board) is VACATED to the extent it affirmed the Workers' Compensation Judge's (WCJ) denial of Petitioners' modification petition based on Claimant's impairment rating, and the matter is REMANDED to the Board with instruction that it remand the matter to the WCJ for the issuance of new findings of fact and conclusions of law.

Jurisdiction relinquished.