IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Temme Tree Service and      :
State Workers' Insurance Fund,      :
              Petitioners      :
     :
          v.      :      No.  601 C.D. 2021
     :      Argued:  March 10, 2022
Jerry Ecott (Workers' Compensation      :
Appeal Board),      :
              Respondent      :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                  FILED:  May 10, 2022


Brian Temme Tree Service (Employer) petitions for review of a May 5, 2021, decision of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) denial of Employer's Petition for Modification of Benefits (Modification Petition).  Employer's Petition sought to alter the disability status of former employee Jerry Ecott (Claimant), who has been receiving total disability benefits under the Workers' Compensation Act[1] (Act) since early 2006. Employer supported its Modification Petition with the report of a qualified physician who performed an Impairment Rating Evaluation (IRE) pursuant

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4; 2501-2710.

to Section 306(a.3) of the Act, 77 P.S. § 511.3.[2]  Claimant did not present any medical evidence directly addressing this evaluation, providing only historical notes of treatment which pre-dated the IRE.  On this record, the WCJ denied the Modification Petition by relying on her own personal disagreement with the IRE physician's methods and conclusions.  Because findings of fact rooted in merely a WCJ's lay opinion on medical issues are not supported by "substantial evidence" as required by 2 Pa.C.S. § 704, we reverse the decision of the Board.

## I.  BACKGROUND

In 2005, Claimant worked for Employer as a timber worker.  Reproduced Record (R.R.) at 45a.  On November 1, 2005, while on the job, Claimant "twisted himself in an unusual manner" as he was lifting a log and began to experience pain in his groin.  R.R. at 41a.  Claimant was later diagnosed with a "right inguinal hernia," for which he received a surgical mesh repair that ultimately worsened his condition by "injur[ing] surrounding nerves."  R.R. at 45a.  As a result, Claimant was further diagnosed with "genitofemoral, ilioinguinal and iliohypogastric neuropathies with chronic pain."  R.R. at 58a.[3]  Based on these conditions, Claimant has been receiving total disability benefits[4] under the Act since January 26, 2006.  R.R. at 32a.

---

[2] Added by Act of Oct. 24, 2018, P.L. 714, No. 111.

[3] The term "neuropathy" refers to "a functional disturbance or pathologic change in the peripheral nervous system."  *Neuropathy*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1250 (33rd ed. 2020).  "Genitofemoral" is a compound of the prefix "genito-," which "denot[es] relationship to the organs of reproduction," and "femoral," which means "pertaining to the femur . . . or to the thigh."  *Id.* at 681, 762.  "Ilioinguinal" is a compound of the prefix "ilio-" and the adjective "inguinal."  "Ilio-" indicates "relationship to the ilium," which in turn is defined as "the expansive superior [upper] portion of the coxal bone."  *Id.* at 903.  "Inguinal" means "pertaining to the groin."  *Id.* at 927.  "Hypogastric" refers to the "hypogastrium," which is another term for "the pubic region."  *Id.* at 890.

[4] "Under workers' compensation law, 'disability' is defined as the loss of earning power attributable to [a] work-related injury."  *Weismantle v. Workers' Comp. Appeal Bd. (Lucent Techs.*), 926 A.2d 1236, 1240 n.10 (Pa. Cmwlth. 2007) (citation omitted).  Thus, benefits for "total

2

On March 27, 2019, Employer required Claimant to undergo an IRE pursuant to Section 306(a.3) of the Act. 77 P.S. § 511.3.[5] R.R. at 41a. John C. Pickard, D.O., a board-certified family physician (Pickard), performed the IRE. R.R. at 44a. Pickard concluded Claimant still suffered from genitofemoral, ilioinguinal, and iliohypogastric neuropathies, for which he had been taking narcotic pain medication. R.R. at 42a-43a. Utilizing the Sixth Edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (*Guides*), Pickard opined that Claimant's condition resulted in an overall whole-body impairment rating of 15%. R.R. at 43a. More specifically, Pickard assigned the maximum impairment rating attributed by the *Guides* to each of Claimant's neuropathies (5%), then combined them for an aggregate rating of 15%. *Id.*

Based on the results of the IRE, Employer filed its Modification Petition on April 18, 2019. R.R. at 1a. In response, Claimant submitted three evaluation reports from his pain management physician, Daphne G. Golding, M.D. (Golding). R.R. at 45a-50a. These reports—dated August 2, 2016, June 12, 2018, and September 6, 2018—all predated the March 27, 2019 IRE and the ensuing report from Pickard. *Id.* Additionally, Claimant's counsel stated on the record that Golding's reports were submitted for "historical" purposes only. R.R. at 25a. The parties agreed to rest their respective cases before the WCJ on documentary medical evidence alone; neither party presented live evidence. R.R. at 58a, Finding of Fact (FOF) 3.

---

disability" compensate an injured worker for a complete loss of earning power. *See* Section 306(a) of the Act, 77 P.S. § 511. Unless altered on petition by the employer, these benefits may be paid indefinitely. 77 P.S. § 511(1) (providing that compensation for total disability shall be "payable for the duration of disability").

[5] When an injured worker is receiving total disability benefits, Section 306(a.3) allows an employer to compel the worker to undergo a medical examination aimed at reevaluating the extent of the worker's disability. This process is discussed in greater detail in Section IV, below.

3

On April 27, 2020, the WCJ issued a written decision denying Employer's Modification Petition. R.R. at 56a-61a. Therein, the WCJ rejected Pickard's IRE results as "not credible or persuasive to support a modification of benefits." R.R. at 59a, FOF 5. The WCJ reasoned that Pickard did not "adequately address [Claimant's] documented chronic pain issues and its [sic] effect on [his] ability to function." *Id.* She noted that Pickard did not perform range-of-motion testing or administer a "Pain Disability Questionnaire," but did not explain why she believed these specific steps to be necessary. R.R. at 59a, FOF 4.c. While the WCJ acknowledged that Pickard's 15% impairment rating was consistent with the percentages assigned to each of Claimant's conditions under the *Guides*, she ultimately held she was "not convinced that the aggregate effect of the pain associated with these conditions may not be significantly more." *Id.* The WCJ did not rest her decision on the evaluation reports authored by Golding—rather, she expressly acknowledged these reports "did not address impairment rating." R.R. at 58a, FOF 3.c.

Employer appealed to the Board. R.R. at 62a. On May 5, 2021, the Board affirmed the WCJ in a divided opinion. R.R. at 68a. The Board held the WCJ had the "prerogative as sole fact finder and arbiter of credibility to reject Dr. Pickard's opinions." R.R. at 72a. The Board maintained this was so even in the absence of competing medical testimony from Claimant; because Employer bore the burden of proving a change in Claimant's disability status, the WCJ was authorized to deny Employer's Petition based on defects in Employer's evidence alone. R.R. at 71a (noting that "[t]he WCJ is permitted to reject uncontroverted evidence if [she] adequately explains the reasons for [her] rejection") (citing *Arvilla v. Workers'*

*Comp. Appeal Bd. (Carlson)*, 91 A.3d 758, 767 (Pa. Cmwlth. 2014)).[6] The Board, however, did not specifically discuss any purported defects in Pickard's report identified by the WCJ, noting simply that she "rejected [Pickard's opinion] as not credible, explaining her reasoning for doing so." R.R. at 72a.

Alfonso Frioni, Jr., Chairman of the Board, filed a dissenting statement in which Commissioners Crawford and Gabig joined. R.R. at 73a. This statement reads in its entirety as follows:

> The WCJ impermissibly substituted her layman's opinion for that of Dr. Pickard's [sic]. Furthermore, the WCJ is not trained or certified in the AMA Guides and has insufficient basis to make a re-determination of the weight assigned to a specific diagnosis prescribed by the Guides.

*Id.* On June 2, 2021, Employer filed a petition for review in this Court. R.R. at 74a.

## II. STANDARD AND SCOPE OF REVIEW

On appeal from a decision of the Board, our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated, whether the WCJ complied with the procedural rules for agency adjudications found in 2 Pa.C.S. §§ 501-508, and whether the WCJ's findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704. This Court applies a *de novo* standard of review to any legal questions. *Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom)*, 2 A.3d 548, 551 (Pa. 2010). Furthermore, "substantial evidence" needed to support the WCJ's findings of fact is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Obimak Enter. v. Dep't of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018).

## III. ISSUES PRESENTED

Before this Court, Employer raises two issues:

---

[6] The Board acknowledged that "the only evidence submitted in this case that pertains to the impairment rating is Dr. Pickard's IRE," and that the evaluation reports from Claimant's pain management physician were submitted for purely "historical" purposes. R.R. at 71a.

1. Whether its Modification Petition was supported by substantial, competent evidence; and
2. Whether the WCJ's ruling on Pickard's credibility should be overturned, because Claimant's medical expert evidence was incompetent to rebut the IRE evidence submitted by Employer.

Employer's Br. at 6. We address only the first issue, as we find it dispositive.

## IV. DISCUSSION

As noted above, this appeal arises from a Modification Petition supported by an IRE. After an injured worker has received total disability benefits under the Act for 104 weeks or more, Section 306(a.3) of the Act authorizes employers to conduct an IRE, which is "a medical examination directed toward assessing the degree of a claimant's impairment attributable to a compensable injury." *IA Constr. Corp. v. Workers' Comp. Appeal Bd. (Rhodes)*, 139 A.3d 154, 155 (Pa. 2016) (citation omitted). IREs must be conducted by qualified physicians[7] in accordance with the *Guides*. 77 P.S. § 511.3(1). If an IRE results in a finding that the worker's whole-body impairment rating is less than 35%, the employer can file a petition for modification of benefits seeking to change the worker's disability status from "total" to "partial." 77 P.S. § 511.3(2).[8, 9] The worker may then contest the results of the IRE through submission of contrary evidence or by cross-examining the employer's

---

[7] Section 306 (a.3)(1) provides that physicians who perform IREs must be licensed in the Commonwealth, certified by a medical board approved by the American Board of Medical Specialties, and active in clinical practice at least 20 hours per week.

[8] Workers' compensation benefits for "total" disability have an unlimited duration, whereas "partial" disability payments are capped at 500 weeks and are defined less generously. *Compare* Section 306(a) of the Act, 77 P.S. § 511, *with* Section 306(b) of the Act, 77 P.S. § 512.

[9] If the employer requests an IRE within 60 days after the claimant has received 104 weeks of total disability benefits, an IRE finding of less than 35% whole-body impairment will automatically change the employee's disability status to "partial." 77 P.S. § 511.3(1); *see also Gardner v. Workers' Comp. Appeal Bd. (Genesis Health Ventures)*, 888 A.2d 758, 767-68 (Pa. 2005). If the employer requests an IRE after that point, it must file a petition for modification of benefits that will be adjudicated according to "the traditional administrative process," i.e., in an adversarial contest with the claimant. *Gardner*, 888 A.2d at 768.

6

witnesses. *Dep't of Pub. Works-Loysville Youth Ctr. v. Workers' Comp. Appeal Bd. (Slessler)*, 103 A.3d 397, 404 (Pa. Cmwlth. 2014). In these proceedings, the employer bears the burden of proving a change in the worker's level of impairment. *Westmoreland Reg'l Hosp. v. Workers' Comp. Appeal Bd. (Pickford)*, 29 A.3d 120, 127 n.10 (Pa. Cmwlth. 2011).

Here, Employer presented Pickard's written IRE report in support of its Modification Petition. *See* R.R. at 41a-44a. Claimant did not submit any evidence addressing Pickard's IRE. While he did submit a series of "evaluation reports" from Golding, these reports did not apply the *Guides* or address Claimant's impairment rating in any other fashion. R.R. at 45a-50a. Furthermore, Claimant's counsel admitted on the record that the reports were offered for "historical" purposes only, R.R. at 25a, while the WCJ expressly found the reports "did not address impairment rating." R.R. at 58a. Finally, as neither party presented live testimony, Claimant's counsel was not able to cross-examine Pickard.

The WCJ rejected Pickard's IRE as "not credible or persuasive to support a modification of benefits." R.R. at 59a, FOF 5. The WCJ supported this conclusion by making three findings of fact pertaining to Pickard's report. First, she found that the report "d[id] not adequately address Claimant's documented chronic pain issues and its [sic] effect on Claimant's ability to function." *Id.* Second, she took issue with Pickard's application of the *Guides*, finding that "although the percentage assigned for each condition is 5%[,] which mathematically adds up to 15%, this [WCJ] is not convinced that the aggregate effect of the pain associated with these conditions may not be significantly more." *Id.* Third, the WCJ pointed to various testing and questioning which Pickard did ***not*** perform in rendering his IRE, including "range of motion testing," a "Pain Disability Questionnaire," and

7

questions concerning "what alleviates or exacerbates Claimant's pain." R.R. at 59a, FOF 4.c.

These findings are not supported by substantial evidence of record. As noted, in this context, "substantial evidence" means "such relevant evidence which a reasonable mind might accept as adequate to support a finding." *York Terrace/Beverly Enters. v. Workmen's Comp. Appeal Bd. (Lucas)*, 591 A.2d 762, 764 n.5 (Pa. Cmwlth. 1991) (citation omitted). We have held that a WCJ cannot support her conclusions by simply interjecting her own lay opinion on medical subjects. *See Slessler*, 103 A.3d at 408. Here, however, the WCJ did just that; she rejected Pickard's impairment rating based solely on her personal opinion of how an IRE addressing Claimant's particular condition should be conducted. For instance, the WCJ criticized Pickard for not performing "range of motion testing" and not questioning Claimant about certain subjects relating to his chronic pain, but did not cite to any source or record evidence dictating that an IRE addressing Claimant's condition ***must*** take these measures. R.R. at 59a, FOF 4.c. Similarly, the WCJ rejected Pickard's whole-person impairment rating of 15% on no basis other than her subjective belief that the "aggregate effect of the pain associated with [Claimant's] conditions may not be significantly more." R.R. at 59a, FOF 5. Crucially, the WCJ did not claim that Pickard misapplied the *Guides* in reaching this figure—she simply voiced a blunt disagreement with his conclusion. Finally, the WCJ's finding that Pickard "d[id] not adequately address Claimant's documented chronic pain issues and its [sic] effect on Claimant's ability to function" similarly finds no support in the record. *Id.* Without evidentiary support of some kind, a WCJ

8

is simply not qualified to opine on what constitutes an "adequate" evaluation of chronic pain.[10]

Given that Pickard's IRE report was the sole evidentiary support for Employer's Modification Petition, these erroneous findings of fact were clearly central to the WCJ's decision.[11] Accordingly, because these findings are not supported by substantial evidence, the WCJ erred in denying Employer's Modification Petition and the Board erred in affirming that determination. *See Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 n.4 (Pa. Cmwlth. 2014) (holding that this Court must determine whether "the **necessary** findings of fact are supported by substantial evidence") (emphasis in original) (citation omitted). Therefore, we reverse.

_____
STACY WALLACE, Judge

---

[10] To be clear, we are not suggesting that a WCJ must cite to specific record evidence every time she judges the credibility of a medical witness. As our Supreme Court held in *IA Construction Corporation v. Workers' Comp. Appeal Board (Rhodes)*, 139 A.3d 154, 163 (Pa. 2016), there are numerous grounds on which a WCJ may properly reject the testimony of a medical witness that do not involve citation to contrary evidence, such as incongruity between the witness's medical specialty and the conclusions he reaches, or a finding that the witness has rendered an "underdeveloped" opinion. However, where, as here, the WCJ renders explicitly "medical" findings of her own—e.g., that a physician should have performed certain procedures—or disagrees with a conclusion arrived at through the application of medical expertise—e.g., an impairment rating produced through application of the *Guides*—those findings must be supported by substantial evidence of record. 2 Pa. C.S. § 704.

[11] Golding's "historical" evaluation reports cannot provide support for these findings. The WCJ herself noted the reports "did not address impairment rating." R.R. at 58a, FOF 3.c.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Temme Tree Service and           :
State Workers' Insurance Fund,          :
                       Petitioners        :
                                             :
                    v.          :          No.  601 C.D. 2021
                                           :
Jerry Ecott (Workers' Compensation     :
Appeal Board),                         :
                      Respondent         :

# **O R D E R**

      **AND NOW**, this 10th day of May 2022, the May 5, 2021 Order of the Workers' Compensation Appeal Board is hereby REVERSED.

 

                                         _____

                                          STACY WALLACE, Judge