IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah Reber,                           :
                    Petitioner           :
                                         :
        v.                               :    No. 868 C.D. 2023
                                         :
R.E. Shenker/Little Lexington Farms      :    Submitted: August 9, 2024
(Workers' Compensation Appeal            :
Board),                                  :
                    Respondent           :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: October 30, 2024


Deborah Reber (Claimant) petitions for review of the July 31, 2023 decision of the Workers' Compensation (WC) Appeal Board (Board), affirming the adjudication of the Workers' Compensation Judge (WCJ), which granted the Modification Petition of R.E. Shenker/Little Lexington Farms (Employer). Upon review, we affirm.

## I.    Facts and Procedural History

Claimant sustained a work-related head injury on April 5, 2008, while employed as a horse trainer for Employer. Post-injury treatment included a left-sided craniotomy to relieve blood pressure on the brain. Employer accepted liability for a subdural hematoma and paid total disability. On May 24, 2010, Claimant underwent

an impairment rating evaluation (IRE) by Anil Choudary Nalluri, M.D., which yielded an impairment rating percentage of 36%, thus falling below the statutory threshold under former Section 306(a.2) of the Workers' Compensation Act (Act).[1] Based on the IRE results, Employer issued a notice of change on June 10, 2010, converting Claimant's status from total to partial disability benefits effective April 9, 2010. (Reproduced Record (R.R.) at 28a.) Claimant did not file a direct appeal from the date of conversion.

On March 24, 2016, before 500 weeks of partial disability expired, Claimant filed a reinstatement petition, alleging that her impairment rating was invalid and unconstitutional. On June 20, 2017, the Supreme Court issued its decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017), holding that the IRE provisions contained in Section 306(a.2) of the Act violated the non-delegation doctrine of the Pennsylvania Constitution and striking Section 306(a.2) in its entirety from the Act. Employer filed a suspension petition, alleging that Claimant's benefits should be suspended because she had received 500 weeks of partial disability after April 9, 2010, pursuant to the notice of change. Employer's suspension petition was consolidated with Claimant's reinstatement petition. In a decision circulated November 6, 2020, the WCJ granted Claimant's reinstatement petition and concluded, based on credible evidence, that Claimant had met her burden of proof under *Whitfield v. Workers' Compensation Appeal Board (Tenet Health Systems)*, 188 A.3d 599 (Pa. Cmwlth. 2018). The WCJ reinstated Claimant's total disability status effective March 24, 2016, the date she filed her reinstatement petition, in accordance with *Whitfield*. The WCJ denied Employer's

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 4 of the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111).

suspension petition. Both parties appealed and, in an opinion and order dated July 26, 2021, the Board affirmed. Both parties again appealed, and this Court affirmed in *Reber v. R.E. Shenker/Little Lexington Farms* (Pa. Cmwlth., No. 933 C.D. 2021, filed March 3, 2023).

On May 10, 2021, pursuant to Section 306(a.3) of the Act,[2] an IRE was performed by Michael Jurenovich, D.O., at the request of Employer. Dr. Jurenovich performed the IRE pursuant to Act 111, which yielded a whole-person impairment rating of 32%. On May 18, 2021, Employer filed a Modification Petition, seeking to modify Claimant's benefits from temporary to partial disability based on the May 10, 2021 IRE. (R.R. at 4a-7a.) Employer also requested credit for all partial disability benefits previously paid to Claimant. The Modification Petition was assigned to a WCJ. Both parties submitted evidence, the following summary of which is derived from the findings of fact by the WCJ.

Employer presented the expert report and deposition of Dr. Jurenovich, a board-certified orthopedic surgeon who was designated by the Bureau of Workers' Compensation (Bureau) perform the May 10, 2021 IRE of Claimant. Dr. Jurenovich is certified by the American Board of Independent Medical Evaluators and the Quality Assurance and Utilization Review Organization. He described his practice as that of a general orthopedic surgeon who treats fractures, arthritis, and back fractures and performs total joint replacements including hip, knee, and shoulder replacements. Dr. Jurenovich is certified by the Commonwealth of Pennsylvania to perform IREs. He is

---

[2] Added by Act 111, 77 P.S. § 511.3 (reestablishing the IRE process effective October 24, 2018). Section 306(a.3)(1) was added by Act 111 provides that once a claimant receives 104 weeks of total disability benefits, the insurer or employer may require the claimant to attend an IRE in order to determine the degree of impairment due to the compensable injury pursuant to the American Medical Association "Guides to the Evaluation of Permanent Impairment" (AMA Guides), Sixth Edition (second printing April 2009).

also certified to perform evaluations under the Fourth, Fifth, and Sixth editions of the AMA Guides. In the 25 years prior to his examination of Claimant, he had performed a couple of dozen or more IREs of individuals who suffered traumatic brain injuries. (Deposition of Michael Jurenovich, D.O. (Jurenovich Depo.), 10/26/21, at 7.) Although Dr. Jurenovich's practice does not include direct treatment of traumatic brain injuries, he has experience in treating patients with that injury since traumatic brain injuries often accompany traumatic orthopedic injuries, which he treats as part of his practice. *Id.* at 8.

Dr. Jurenovich examined Claimant on May 10, 2021. In advance of his examination of Claimant, Dr. Jurenovich was provided with copies of Claimant's voluminous medical records, which he reviewed in preparation for the exam. *Id.* at 9. At the time of the evaluation, Claimant reported difficulties with activities of daily living including balance issues, memory loss, depression, anxiety, and irritability. She also reported having been diagnosed with breast cancer several months earlier. *Id.* at 12-13. She was taking several anti-psychotic medications including Prozac, Remeron, and Abilify. She also had been prescribed Lioresal for muscle relaxation and Baclofen and Mobic for arthritic problems. *Id.* at 13. Claimant was, to Dr. Jurenovich's observation, mildly weak compared to her stated age, but he noted she had been undergoing chemotherapy for her cancer. *Id.* Claimant wore sunglasses and a mask during the examination as well as a wig, and both were crooked. During the examination portion, Claimant did not remove her mask or sunglasses which hindered a complete neurological examination. However, Dr. Jurenovich reported this did not render him unable to perform the IRE. *Id.* at 13-15. He stated Claimant did fairly well overall on the neurological examination, noting that it was a 13-year-old head injury. She had not seen a neurologist since 2008. *Id.* at 17-18. Dr. Jurenovich assessed

Claimant as being at maximum medical improvement (MMI). *Id.* at 19. He did not anticipate a change in her condition in the next 12 months regardless of the treatment.

In his IRE assessment, Dr. Jurenovich first used Table 13-8 on page 331 of the Sixth Edition of the AMA Guides for an alteration in mental status, cognition and the highest integrative functioning (AMSCHIF). *Id.* at 20-21. Based upon the AMSCHIF chart, he placed Claimant at Class 2 which would provide a range of 11-20% impairment. *Id.* Because her condition was not serious enough to be rated as a Class 3, but was close, he gave her the top level in Class 2 of 20%. *Id.* at 21-22. He then went to the psychiatric ratings, Brief Psychiatric Rating Scale (BPRS), beginning with Table 14-8. This chart has 24 symptoms which are to be rated on a 1-7 scale, with 1 being not present and 7 being extreme. In rating those symptoms, he gave Claimant a total of 45 points. *Id.* at 22-23.

Specifically, with regard to somatic concerns, Dr. Jurenovich found "not much going on there" so he assigned her a 1. She had a lot of anxiety on the day of his examination, so he assigned her a 4. *Id.* at 24. For depression, he gave her 5 points. For suicidal thoughts he assigned her a 1 because at no time did she have suicidal thoughts. *Id.* at 25. For bizarre behavior, he gave her a 5 because although she was cooperative, she would not take her mask or glasses off and she was a little disheveled. *Id.* For blunt affect, he gave her a 5. *Id.* For emotional withdraw, he thought she was very emotional and assigned her a 5. *Id.* at 26. For all other categories, he gave her 1's. *Id.* at 25-26. Based upon a total score of 45 for BPRS, Dr. Jurenovich assigned Claimant a 15% impairment. *Id.* at 26.

Dr. Jurenovich then used the Psychiatric Impairment Rating Scale (PIRS), Tables 14-11 thru 14-16 and based upon those different ratings gave her a score of 8 points for a 15% rating. *Id.* at 26. Finally, he evaluated Claimant under the Global

Assessment of Function (GAF) rating, Table at 14-10, and found her that day to be at 10%. *Id.* at 27-28. The doctor then turned to the combined values chart and took the values of 20% for the AMSCHIF and 15%, which was the middle score of the psychiatric ratings (BPRS, PIRS and GAF), and arrived at an impairment rating of 32%. *Id.* at 28-29.

On cross-examination, Claimant's counsel addressed with Dr. Jurenovich the purpose of the AMA Guides and particular sections thereof. Dr. Jurenovich conceded that he did not consider Dr. Nalluri's prior impairment rating because it was done over 10 years ago. Dr. Jurenovich conceded he did not document the mental status examination or GAF score in his report, but rather documented the percentage. He acknowledged that under Section 14.2 of the AMA Guides, he is to report a history, review of records, and the mental status examination. He did not detail these items in his report, although he did document them in his notes. He agreed that if Claimant's BPRS score had been 1 point higher, the middle score would have been 20%, and the combined rating would have been 36%. Dr. Jurenovich further admitted on cross-examination that Claimant could have had a different BPRS score the next day and that it could have been higher or lower. On further questioning, Dr. Jurenovich explained that Claimant's affect and somatic condition were good.

Claimant presented the expert report and deposition testimony of Anthony Ricci, M.D., a board-certified physiatrist retained by Claimant. Dr. Ricci evaluates and treats individuals with musculoskeletal and nervous system issues. He also treats closed-head injuries, but that is only about 5% of his practice. Like Dr. Jurenovich, he is certified under the Fourth, Fifth, and Sixth editions of the AMA Guides. Dr. Ricci did not examine or perform an IRE of Claimant, but, rather only reviewed the

6

impairment rating reports of Dr. Nalluri and Dr. Jurenovich. In his expert report, dated July 13, 2021, Dr. Ricci stated:

> **I must say that I find Dr. Nalluri's report more credible.** The report provided the raw data and the calculations. Each data set and its calculations were explained by Dr. Nalluri. Dr. Jurenovich did not provide raw data, calculations or explanation. Furthermore, psychiatrists perform traumatic brain injury evaluations as part of their practice on a regular basis; orthopedic surgeons do not.

(Ricci Expert Report at 1) (emphasis added).

During his deposition, Dr. Ricci explained that he was asked to evaluate the differences in the reports of Dr. Nalluri and Dr. Jurenovich and explain why the differences occurred. Dr. Ricci testified that Dr. Jurenovich did not follow the proper method when rating Claimant's mental and behavioral issues. In Dr. Ricci's opinion, if Dr. Jurenovich had done things correctly according to the AMA Guides, Claimant's rating would have been higher. Dr. Ricci felt that Dr. Nalluri's report was more substantive and persuasive because it included the raw data in an organized format, whereas Dr. Jurenovich's report did not. Dr. Ricci acknowledged that both Dr. Nalluri and Dr. Jurenovich assessed Claimant as she was when they saw her, 11 years apart, and that Dr. Ricci would have to physically examine Claimant in order to provide his own impairment rating. Dr. Ricci was then asked the following question:

> Now, let's turn to the scores that Dr. Jurenovich gave for the BPRS. That's on the chart page, his handwritten notes. Start the — **starting with []** — **each of the symptoms he gave** – for Number 1 symptom, somatic concern, he rated it as a 1. **Do you have an — based upon his report and Dr. Nalluri's report, do you have an opinion as to whether or not she exhibited any somatic concerns at all**?

7

(Deposition of Dr. Ricci, at 20) (emphasis added). Counsel for Employer then stated an objection asserting,

> Well, the reports speak for themselves. **I think that when you're asking the doctor to — to review the reports and make a comment on the reports, you're asking the doctor to comment on the credibility of the opinions**, and I think that's not the doctor— that's not the doctor's province here, that's the province of the judge.

*Id.* at 21.

In response, Claimant's counsel said: "I am asking the [WCJ] to make a determination as to whether or not Dr. Jurenovich followed the appropriate method under which he performed his impairment rating evaluation, and that is an expert opinion that Dr. Ricci is providing." *Id.* at 21.

Later in the deposition, Dr. Ricci was asked whether Dr. Jurenovich should have taken into account Claimant's history, as Claimant stated to Dr. Nalluri in 2010 that she has anger issues. *Id.* at 25. Employer's counsel objected to the question, because it went to "the credibility of [Dr. Jurenovich's] testimony. . . which is not the subject of expert testimony." *Id.* at 25-26.

On June 27, 2022, the WCJ issued a decision granting Employer's Modification Petition and converting Claimant's total disability status to partial disability status effective May 10, 2021. The WCJ also gave Employer credit for 311 weeks and 2 days of partial disability payments made under the IRE performed in 2010. The WCJ found Dr. Jurenovich credible and convincing to establish a 32% impairment rating as of May 10, 2021. The WCJ found the opinions of Dr. Ricci were not of great weight or significance because

> [h]e did not examine Claimant, and he only conducted a limited review of related records. His opinion that Dr.

Jurenovich did not perform a proper or complete examination is not credible given these facts. In addition, many of the opinions seemed speculative and unimpressive given the lack of medical records to review. It is a bit hypocritical to attack Dr. Jurenovich's lack of consideration of medical records, or lack of documentation, where Dr. Ricci did not review anywhere near the records volume that Dr. Jurenovich did. As such, I do not rely on Dr. Ricci for my assessment of Dr. Jurenovich's alleged failings.

(WCJ decision, 6/27/22, Findings of Fact (FOF) No. 9.)

The WCJ also ruled upon objections made by counsel for Employer during the deposition of Dr. Ricci. The WCJ overruled Employer's objection to the admission of the deposition and opinions of Dr. Ricci. The WCJ sustained two objections to the testimony of Dr. Ricci insofar as he commented upon the credibility of Dr. Jurenovich's opinions. The WCJ sustained the objection, explaining:

The objections raised at pages 20-22 of the transcript of Dr. Ricci **objecting to Dr. Ricci expressing an opinion as to the credibility of Dr. Jurenovich's opinions are sustained**. The objection raised at page 25 of Dr. Ricci's deposition to Dr. Ricci **expressing an opinion as to the credibility of Dr. Jurenovich's impairment rating is sustained**.

*Id.*, FOF No. 7 (emphasis added).

Claimant appealed to the Board, arguing that the WCJ erred in granting Employer's Modification Petition because applying Act 111 to claimants such as her whose injuries were sustained prior to its enactment violates the (1) Remedies Clause in article I, section 11 of the Pennsylvania Constitution; (2) the right to due process; and (3) article III, section 18 of the Pennsylvania Constitution providing for reasonable compensation under the Act. She also argued that the WCJ erred in making his credibility findings and in sustaining credibility objections regarding the testimony of her medical expert. The Board affirmed. Applying this Court's decisions in *Pierson*

9

*v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal Co., LLC)*, 252 A.3d 1169 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 261 A.3d 378 (Pa. 2021); *Hutchinson v. Annville Township (Workers' Compensation Appeal Board)*, 260 A.3d 360 (Pa. Cmwlth. 2021), and *DiPaolo v. McGee Women's Hospital (Workers' Compensation Appeal Board)*, 278 A.3d 430 (Pa. Cmwlth. 2022), the Board determined that the WCJ did not err from a constitutional standpoint in granting Employer's Modification Petition under Act 111. With regard to Claimant's challenge to the WCJ's rulings on the objections to her medical expert's testimony, the Board rejected this argument as well, concluding that the WCJ made an informed decision to credit Employer's evidence over that presented by Claimant and that it cannot re-weigh the evidence or disturb the WCJ's credibility determinations. Claimant appealed to this Court.[3]

## II. Issues

Claimant raises three issues on appeal:

1. Whether the WCJ made improper findings regarding the competency of Dr. Jurenovich when that opinion is challenged as being inconsistent with the AMA Guides, [Sixth] Edition, second printing?

---

[3] This Court reviews an order of the WCJ for violations of a petitioner's constitutional rights, violations of agency practice and procedure, and other errors of law. 2 Pa. C.S. § 704. We also review for lack of substantial evidence supporting the findings of fact necessary to sustain the order. *Id.* In considering questions of law, our standard of review is *de novo*, and our scope of review is plenary. *See Edwards v. Workers' Compensation Appeal Board (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161 n.4 (Pa. Cmwlth. 2016). In other words, we need not defer to the conclusions of law below, and we review the entire record before us with a fresh pair of eyes. Additionally, we recognize that "any party challenging the constitutionality of a statute must meet a heavy burden, for we presume legislation to be constitutional absent a demonstration the statute 'clearly, palpably, and plainly' violates the Constitution." *Konidaris v. Portnoff Law Assocs., Ltd.*, 953 A.2d 1231, 1239 (Pa. 2008) (citation omitted).

10

2. Whether by granting Employer credit for compensation paid under an unconstitutional IRE and applying Act 111 to an injury prior to the effective date of that Act violates the right of Claimant under article I, section 11 of the Pennsylvania Constitution (Remedies Clause) and due process such that the WCJ decision should be reversed?

3. Whether Act 111 is unconstitutional under article III, section 18 of the Pennsylvania Constitution as Act 111 does not provide for reasonable compensation where total disability can change from day-to-day depending on the then mental condition of the injured worker?

(Claimant's Br. at 4.)

### III.    Analysis

### A. WCJ's Rulings on Employer's Objections to Dr. Ricci's Testimony

The first issue raised by Claimant concerns the findings of the WCJ in making credibility determinations. Specifically, Claimant takes issue with Findings of Fact, 7 and 9. In Finding No. 7, the WCJ sustained an objection to the testimony of Dr. Ricci to the extent he was opining on the credibility of Dr. Jurenovich. Dr. Ricci was asked a question about whether, contrary to Dr. Jurenovich's assessment, Claimant "exhibited" any somatic concerns that Dr. Jurenovich should have considered in arriving at the BPRS score. Claimant asserts that Dr. Ricci's testimony was intended to address this Court's decision in *Brian Temme Tree Service v. Jerry Ecott (Workers' Compensation Appeal Board*) (Pa. Cmwlth, No. 601 C.D. 2021, filed May 10, 2022). She contends that by sustaining the two objections, the WCJ failed to consider testimony necessary to evaluate the competency of Dr. Jurenovich in his application of the AMA Guides. According to Claimant, Dr. Ricci's testimony that Dr. Jurenovich misapplied the AMA Guides by failing to consider recorded somatic complaints (issues of balance, memory loss, depression, anxiety, taste, smell, and irritability) is exactly the kind of evidence that this Court in *Brian Temme Tree Service* required in these

11

types of cases and, therefore, the WCJ erred by sustaining the objections raised by Employer's counsel. She contends that the WCJ would not have been permitted to conclude that Dr. Jurenovich's IRE was faulty without such evidence.

Regarding Finding No. 9, Claimant argues that the WCJ applied the incorrect standards to determine if Dr. Ricci was credible because the WCJ misperceived the purpose of the opinion of Dr. Ricci – which was to challenge the process by which Dr. Jurenovich performed the IRE of Claimant. She argues that the credibility standards applied by the WCJ to evaluate Dr. Ricci's testimony were for an opinion based upon an IRE, not for a review of medical records or reports.

As we understand it, the crux of Claimant's argument regarding Finding No. 7 seems to be that by sustaining the objections made during Dr. Ricci's testimony, the WCJ essentially precluded Claimant from presenting any evidence on which the WCJ could assess any failings on the part of Dr. Jurenovich, which she describes as his "competency." She contends this is contradictory to *Brian Temme Tree Service*, which requires expert evidence to support a finding that the results of an IRE are incorrect.[4]

_____

[4] In *Brian Temme Tree Service*, the WCJ denied the employer's modification petition based on an IRE. The WCJ rejected the opinion of the impairment rating physician as "not credible or persuasive to support the modification of benefits." (Slip op. at 3.) The WCJ rejected the opinions of the impairment rating physician "as not credible or persuasive to support the modification of benefits." *Id.* The WCJ rejected the opinions of the IRE physician because the physician did not "adequately address the claimant's documented pain issues and [their] effect on his chronic pain issues and [their] effect on his ability to function." *Id.* The WCJ also noted that the impairment rating physician did not perform range-of-motion testing or administer a "pain disability questionnaire," but the WCJ did not explain why she believed those specific steps were necessary. *Id.* at 3-4. The employer appealed the WCJ's decision to the Board, which affirmed. The employer appealed to this Court, which reversed the Board and the WCJ, finding that the WCJ impermissibly substituted her opinion for that of the impairment rating physician. We held that a WCJ cannot reject an impairment rating based solely on his or her own lay opinion of how an IRE should be conducted, where the factors relied upon by the WCJ in rejecting the opinion of the impairment rating physician were not supported by substantial and competent evidence of record. *Id.* at 1, 5-7.

**(Footnote continued on next page…)**

12

First, Claimant exaggerates the WCJ's rulings on Employer's objections to Dr. Ricci's testimony. Despite the WCJ's ruling on the two objections, Claimant was still able, through Dr. Ricci's testimony, to challenge Dr. Jurenovich's IRE by pinpointing purported errors of fact or errors in his application of the AMA Guides. The WCJ sustained two objections to Dr. Ricci's testimony **only** to the extent Dr. Ricci directly expressed an opinion as to the credibility of Dr. Jurenovich. Again, the objection was "if you are asking the doctor to comment on the credibility of the opinions . . . that is the not the doctor's province here, that's the province of the [WCJ]." (R.R. at 169a.) The WCJ sustained the objection only to the extent that Dr. Ricci was offering or about to comment on the **credibility** or reliability of Dr. Jurenovich's **opinions**. Otherwise, the WCJ fully considered Dr. Ricci's testimony, which in large part focused solely on the reasons why he believed Dr. Jurenovich's IRE was not done properly and/or fell short in certain ways. Dr. Ricci's deposition was admitted into evidence in its entirety, over the objection of Employer's counsel. As noted above, the WCJ overruled Employer's objection "regarding Dr. Ricci's testimony as to a proper impairment rating for Claimant." (FOF 7.) The WCJ also overruled Employer's objection to the entirety of Dr. Ricci's deposition on grounds that he was judging the credibility of Dr. Jurenovich. (FOF 10.) The WCJ specifically stated that he was "only ruling out very brief parts of the testimony." *Id.* The WCJ clearly considered Dr. Ricci's opinions regarding the way in which Dr. Jurenovich rated Claimant under the

To the extent that Claimant suggests otherwise, *Brian Temme Tree Service* did not state a new principle of law or impose an increased burden on employers in modification petitions. It has been long settled that to support a finding that an IRE is not reliable or credible on the basis that the physician did not properly interpret or apply the AMA Guides, the WCJ must identify specific evidence of record (*e.g.*, testimonial or documentary evidence or evidence elicited through cross-examination) to support that finding. *See Department of Public Welfare v. Workers' Compensation Appeal Board (Slessler)*, 103 A.3d 397, 405 (Pa. Cmwlth. 2014). The Court in *Brian Temme Tree Service* simply followed that precedent and applied it to the unusual circumstances in that case.

13

AMA Guides, in particular his alleged failure to consider Claimant's reported somatic concerns.

Any failure of a medical expert to apply pertinent guidelines, as was alleged here, affects the credibility of such a witness rather than his competency. *See Slessler*, 103 A.3d at 405. Differences of opinions between two IRE doctors, both in their conclusions and in their methodologies, are questions of medical judgment. *Tedesco v. Kane Freight Lines, Inc.* (Workers' Compensation Appeal Board) (Pa. Cmwlth., No. 1270 C.D. 2021, filed May 19, 2023), slip op. at 21.

With respect to Dr. Jurenovich's score of 1 on the BPRS scale, Dr. Ricci believed this score was too low. It was Dr. Ricci's opinion that Dr. Jurenovich should have, as Dr. Nalluri did, taken into account all of Claimant's reported somatic complaints (which included problems with activities of daily living along with issues of balance, memory loss, depression, anxiety, taste, smell, and irritability).[5] Dr. Jurenovich, in contrast, based his score on what he found on the day he examined Claimant. He described somatic concern as her "overall wellbeing. Is she alert? Is she talking? Is she on time?" (Jurenovich Depo., at 58-59.) He testified that she answered his questions, she had no anger or memory loss problems that day, and he "thought she was average, no deficits." *Id.* at 59-60. We discern no problem with the WCJ's analysis. It is the claimant's physical condition at the time of the IRE that governs the validity of the IRE. *Westmoreland*, 29 A.3d at 123, 128 (The purpose of the IRE is to

---

[5] Claimant states on page 8 of her Brief that "[a]t the time of the evaluation, Claimant **provided** symptoms of balance issues, memory loss, depression, anxiety[,] and irritability." (Claimant's Br. at 8) (emphasis added). However, according to Dr. Jurenovich's testimony, at the evaluation, Claimant did not **exhibit** these symptoms. Because Dr. Jurenovich observed no objective evidence of these conditions, he was not required to rate them. *See Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Pickford)*, 29 A.3d 120, 128 (Pa. Cmwlth. 2011) (where the claimant did not exhibit objective symptoms of reflex sympathetic dystrophy at the time of the IRE, the AMA Guides required a zero impairment rating for that condition).

14

present "a snapshot of the claimant's condition at the time of the IRE, not a survey of the claimant's work-related injuries over a period of time."). The AMA Guides require objective evidence of a condition in order to rate it. *Id.* The disagreements between Dr. Ricci and Dr. Jurenovich as to application of and methodologies under the AMA Guides are questions of medical judgment. These differences of opinion went to the weight and credibility of their testimonies. *Slessler*.

The WCJ is the ultimate determiner of credibility. *Universal Cyclops Steel Corp. v. Workmens' Compensation Appeal Board (Krawczynski)*, 305 A.2d 757 (Pa. Cmwlth. 1973). Credibility determinations are not subject to review by this Court. *Greenwich Collieries v. Workmens' Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa. Cmwlth. 1995). It is the WCJ's function to weigh the evidence and resolve conflicting testimony. *Alpo Pet Foods, Inc. v. Workmens' Compensation Appeal Board (Neff)*, 663 A.2d 293 (Pa. Cmwlth. 1995); *Buczynski v. Workmens' Compensation Appeal Board (Richardson-Vicks, Inc.)*, 576 A.2d 421 (Pa. Cmwlth. 1990). The WCJ is free to accept, in whole or in part, the testimony of any witness, including medical witnesses. *Greenwich Collieries*.

The WCJ's decision to credit Dr. Jurenovich's opinions were supported by substantial evidence. In Finding No. 8, the WCJ identified the basis for his determination that the testimony of Dr. Jurenovich was credible. The WCJ noted that Dr. Jurenovich performed an examination, reviewed voluminous records, and documented the basis for his opinions and reports. He further noted that Dr. Jurenovich came across as both candid and confident. Although the WCJ acknowledged that Dr. Jurenovich made some concessions on cross-examination, he maintained his position as expressed on direct examination. The WCJ found that overall, Dr. Jurenovich's

15

testimony as a whole was credible and convincing and established a 32% impairment rating as of May 10, 2021, sustaining Employer's burden of proof.

In Finding No. 9, the WCJ discussed Dr. Ricci's testimony and his determination that the testimony was not credible. Claimant contends that the WCJ's finding misses the point of Dr. Ricci's testimony, which was to provide a critique of whether Dr. Jurenovich performed the IRE correctly under the AMA Guides. Claimant argues Dr. Ricci's testimony was provided to demonstrate that Dr. Jurenovich's IRE "was not competent evidence," as required by *Brian Temme Tree Service*.

We disagree that the WCJ committed error in failing to accept the testimony of Dr. Ricci concerning the methodology employed by Dr. Jurenovich. It is true that a claimant's expert may "successfully challenge the reliability of the IRE by pinpointing errors of fact or errors in the IRE physician's application of the AMA Guides." *Westmorland*, 29 A.3d at 128 n.10. However, the credibility and weight of that testimony is entirely up to the WCJ.

Here, the WCJ's findings of fact with regard to Dr. Ricci's testimony are relevant in assessing his credibility finding in Finding No. 9. In Finding No. 5, the WCJ described Dr. Ricci's testimony as follows:

> He did not examine Claimant, however, and the only records he reviewed were the impairment rating reports of Dr. Nalluri and Dr. Jurenovich, along with the [two]-page IRE worksheet from Dr. Jurenovich. Dr. Ricci explained that he thought the report from Dr. Nalluri was more detailed and properly provided raw data, while the report of Dr. Jurenovich did not. Dr. Ricci explained that this was important because it makes it difficult to determine how Dr. Jurenovich reached his conclusions. Dr. Ricci did review the raw data before the deposition. Dr. Ricci explained the difference between the first printing of the [Sixth] edition and the second printing of the [Sixth] edition of the [AMA]

16

Guides is there was a minor change in the Brief Psychiatric Rating Scale (BPRS). He explained that the changes were to include a more refined system of grading below a score of 51 on the scale. Dr. Ricci stated that the score from Dr. Nalluri would not have changed, although Dr. Jurenovich's score would have, in fact, been different. Dr. Ricci explained that the score of 46 under the second printing would have given a 20 [%] BPRS rating. Dr. Ricci explained that his view of the AMA Guides is that they require an assessment of the mood and behavior, not just on the date of the exam, but through the record review and the behavior over time. He explained that Dr. Jurenovich's BPRS numbers were not accurate and should have been higher based on documented hostility and other symptoms as seen in Claimant's records.

(FOF 5.)

The WCJ was obviously aware that the purpose of Dr. Ricci's testimony was to challenge Dr. Jurenovich's methodology and application of the AMA Guides. The WCJ emphasized that Dr. Ricci only reviewed a couple of pages of records and did not perform his own IRE or examine Claimant. The WCJ also noted that one of Dr. Ricci's criticisms of Dr. Jurenovich's IRE was that he did not include the raw data in his report. However, as the WCJ noted, Dr. Jurenovich's raw data was available to Dr. Ricci before the deposition. The WCJ also noted that Dr. Ricci believed that the AMA Guides required Dr. Jurenovich to assess Claimant's mood and behavior not just on the date of the exam, but through record review and the behavior over time. These were adequate bases upon which to find Dr. Ricci's critique of Dr. Jurenovich not persuasive. "The WCJ, as the ultimate factfinder in workers' compensation cases, 'has exclusive province over questions of credibility and evidentiary weight.'" *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013) (quoting *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010)). We are bound by these

17

credibility determinations and cannot overturn them on appeal. There is ample evidence in the record to support the WCJ's credibility findings with respect to his rejection of Dr. Ricci's opinions.

Because the WCJ did not err in sustaining the objections to Dr. Ricci's testimony insofar as he commented on the credibility of Dr. Jurenovich's opinions, and because the WCJ's decision to credit Dr. Jurenovich over Dr. Ricci was supported by substantial evidence, we find Claimant's first issue to be without merit.

## B. Claims Pursuant to the Remedies Clause of the Pennsylvania Constitution

In her second issue, Claimant argues that Act 111's retroactive application violates the Remedies Clause of the Pennsylvania Constitution[6] by extinguishing a "vested right" and "property interest" in her indemnity benefits. Although Claimant acknowledges the holding of this Court in *Pierson* and its progeny, she claims that *Pierson* was wrongly decided because it concluded, without citing to any precedent,

---

[6] The Remedies Clause provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. . . . Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 11. The Remedies Clause "is invoked when a change in the legislation attempts to alter or eliminate a vested or accrued cause of action." *Dana Holding Corp. v. Workers' Compensation Appeal Board (Smuck)*, 195 A.3d 635, 643 (Pa. Cmwlth. 2018), *aff'd*, 232 A.3d 629 (Pa. 2020). Thus, the Remedies Clause encompasses only those interests which are vested, *i.e.*, "something more than a mere expectation, based upon an anticipated continuance of existing law. It must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another." *Lewis v. Pennsylvania Railroad Co.*, 69 A. 821, 823 (Pa. 1908). Once vested, the Remedies Clause safeguards "an individual's remedy for an injury done" from retroactive legislative action. *Konidaris v. Portnoff Law Associates, Ltd.*, 953 A.2d 1231, 1242 (Pa. 2008).

18

that injured workers have no vested right to continuing benefits as benefits under the Act may change at any time. Claimant contends that this conclusion "flies in the face" of the Supreme Court's decision in *Dana Holding*, wherein the Supreme Court held that Workers' Compensation claimants have an "entitlement to continuing benefits." *Dana Holding*, 232 A.3d at 648.

In *Pierson*, we held that the credit afforded to an employer in Act 111 is to be given retroactive effect. 252 A.3d at 1180. There, the claimant argued that applying Act 111 to injuries predating its enactment would impair the claimant's vested rights. *Id.* at 1175. More particularly, the claimant argued that Section 306(a.3) of the Act could not be applied retroactively to affect the 500 weeks of benefits payable for partial disability by giving the employer credit for payments made prior to Act 111's enactment. *Id.* In rejecting the claimant's vested rights argument, we observed that "there are reasonable expectations under the Act that benefits may change." *Id.* at 1177. Citing *Warren v. Folk*, 886 A.2d 305 (Pa. Super. 2005), we explained when a law is to be given retroactive effect. In *Warren*, the Pennsylvania Superior Court explained that it and the Supreme Court had considered the issue of retroactivity in terms of whether the statute in question affects vested rights and determined that

> [w]here no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events prior to that date . . . . A "vested right" is one that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent."

*Id.* at 308.

Analyzing whether the claimant's Workers' Compensation benefits were vested or not within that framework, we then concluded in *Pierson* that, while the

claimant had a right to benefits as calculated at the time of injury, **there are reasonable expectations under the Act that benefits may change**. Therefore, the claimant did not automatically lose anything by Act of 111. Rather, "Act 111 provided employers with a means to change a claimant's disability status from total to partial by providing the requisite medical evidence that [a] claimant has a whole[-]body impairment of less than 35%, after receiving 104 weeks of temporary total disability benefits." *Pierson*, 252 A.3d at 1179.

Claimant does not proffer any persuasive reason why we should revisit our holding in *Pierson*. *Pierson* has been reaffirmed by this Court many times and in cases that the Pennsylvania Supreme Court has denied petitions for allowance of appeal, allowing the decision to stand. *See Pierson* and *DiPaolo*; *Dunetz v. Charles H. Sacks D.M.D., P.C. (Workers' Compensation Appeal Board)*, 304 A.3d 134, 142-43 (Pa. Cmwlth. 2023) (*en banc*) (rebuffing the argument that "a claimant has a vested right to ongoing benefits indefinitely," explaining "'there are reasonable expectations under the [] Act that benefits may change,' and it is not an extraordinary circumstance that a claimant's indemnity benefits may be reduced or end before a claimant believes they should") because "we are bound to follow the decisions of our Court unless overruled by the Supreme Court or where other compelling reasons can be demonstrated," *Crocker v. Workers' Compensation Appeal Board (Georgia Pacific LLC)*, 225 A.3d 1201, 1210 (Pa. Cmwlth. 2020), we once again reject this constitutional challenge.

We also reject Claimant's argument that *Pierson* is inconsistent with the Supreme Court's holding in *Dana Holding*. *Dana Holding* involved the application of *Protz* to a case that was pending on appeal when *Protz* was decided. In *Dana Holding*, the Supreme Court addressed retroactive application of *Protz* specifically regarding a

20

scenario in which the pertinent constitutional challenge was advanced during the course of direct appellate review. Ultimately, the Supreme Court applied the general rule of retroactivity and held that its *Protz* decision applies to all cases currently pending on appeal at the time it was decided and where IRE constitutionality was appropriately raised. *Id.* at 648. In rejecting the employer's argument that the claimant in that case would not be prejudiced by a prospective application of *Protz*, the Supreme Court explained that a claimant has the right to be free of having his or rights defined without improper delegation:

> [The c]laimant had a right to be free from an unconstitutional delegation of legislative power affecting his substantive rights, which will be vindicated here. Significantly, this case arises in the landscape of the substantial compromises and tradeoffs effected in a workers' compensation system, to which this Court has alluded many times. . . . And the claimants' interests are substantially elevated in the IRE context, in light of the 'severe and explicit repercussions . . . upon **[the] claimant's entitlement to continuing benefits**,' without any evaluation (administrative, judicial, or otherwise) of the traditional disability considerations of ability to work and job availability. *I.A. Construction* [*v. Workers' Compensation Appeal Board (Rhodes)*], [] 139 A.3d [154,] 159-60 [(Pa 2016)].

*Dana Holding*, 232 A.3d at 648 (emphasis added).

Claimant argues that this statement, particularly the above-emphasized language, constitutes a holding that a claimant has a **vested right** in ongoing temporary total disability benefits. We disagree that *Dana Holding* supports the relief Claimant seeks under these circumstances. First, the Supreme Court's decision, by its own terms, is limited to the factual situation presented to it and not to the factual situation present in this case. In this case, Claimant did not have a petition or appeal challenging her

21

change in status pending at the time of the decision in *Protz*. This matter does not involve the general rule that was discussed and applied in *Dana Holding*: the retroactive application of *Protz* to all cases pending on appeal when the cases were decided, in which the issue was raised, resulting in those IREs being invalid from the date they were obtained. Second, our Supreme Court has cautioned against cherry-picking phrases out of context. *See Scampone v. Highland Park Care Center, LLC*, 57 A.3d 582, 604 (Pa. 2012). That precept is particularly relevant here because *Pierson* post-dated *Dana Holding*, and the validity of *Pierson's* analysis was simply not before the *Dana Holding* Court. *See Hardik v. Community Health Systems* (Workers' Compensation Appeal Board) (Pa. Cmwlth., No. 385 C.D. 2022, filed May 17, 2023)[7] (unreported) (rejecting this very argument).

Third, the language "**entitlement to continuing benefits**" in the above excerpt from *Dana Holding* does not clearly evidence a declaration by the Supreme Court that claimants have a **vested interest** in receiving ongoing temporary total disability benefits for purposes of an analysis under the Remedies Clause. We think it is a stretch to argue that it does. When the language is read in the proper context, the Supreme Court was analyzing a question of retroactivity of *Protz*, specifically, the relative hardships on claimants and employers, observing simply that in the IRE situation, the change in disability status from total disability to partial disability is automatic if an IRE rating is less than the threshold percentage of impairment, without regard to earning power or job availability. That is, a claimant's entitlement to ongoing benefits depends on the results of an IRE. Thus, the language "entitlement to" was a reference to a claimant's undetermined or undecided right or claim (pending the results

_____

[7] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported decisions cited herein are cited for their persuasive value.

22

of the IRE), not a vested one. That is entirely consistent with *Pierson*, which held that claimants do not acquire a vested right in temporary total disability status at any given time because that status is subject to potential litigation by employers. In making this statement, the Supreme Court in no way held or even suggested that injured workers have a vested right to ongoing temporary total disability status for purposes of the Remedies Clause analysis. For these reasons, the above quoted language from the Supreme Court's decision in *Dana Holding* does not require us to reverse the Board.

## C. Claims Pursuant to Article III, Section 18 of the Pennsylvania Constitution

In her final issue, Claimant presents a challenge to Act 111 under article III, section 18 of the Pennsylvania Constitution, which states, in part:

> The General Assembly may enact laws requiring the payment by employers, or employers and employes jointly, of reasonable compensation for injuries to employes arising in the course of their employment, and for occupational diseases of employes, whether or not such injuries or diseases result in death, and regardless of fault of employer or employe, and fixing the basis of ascertainment of such compensation and the maximum and minimum limits thereof, and providing special or general remedies for the collection thereof[.]

Pa. Const. art. III, § 18.

Claimant argues that the testimony of Dr. Jurenovich establishes that the AMA Guides rating system for traumatic brain injuries is so speculative and arbitrary that it deprives her of reasonable compensation. She seems to take issue with the subjective nature of the IRE and the fact that the IRE is based on an assessment of a claimant's symptomology only on the day of the examination. She argues that day-to-day fluctuations can result in an injured worker being less than 35% one day but 35%

23

or more the day before or the day after. She questions how, under this scheme, there could be any definitive determination of impairment. As an example, she posits that "if the score is only one on one day, who is to say that she would not be better or worse the day before or the day after." (Claimant's Br. at 51.) She contends that "[i]f day-to-day fluctuations can result in an injured worker being less than 35% one day but 35 percent or more the day before or the day after should an examination take place on sequential days how is there any definitive determination of impairment." *Id.* at 52.

We reject Claimant's attempt to use the deposition testimony of Dr. Jurenovich in this case to establish that the AMA Guides rating system is speculative and arbitrary. As we explained in *Westmoreland*, "[b]oth the Act and the AMA Guides anticipate and, indeed, require an impairment rating to be based on the claimant's condition on a particular day, *i.e.*, the '**date of the IRE physician's evaluation**.'" 29 A.3d at 128 (emphasis in original). A claimant "may introduce his own evidence regarding his degree of impairment to rebut the IRE findings." *Diehl v. Workers' Compensation Appeal Board (I.A. Construction)*, 5 A.3d 230, 245 (Pa. 2010).

Here, Claimant offered no such evidence. She also offered no evidence to contradict Dr. Jurenovich's testimony that he did not find objective signs of a brain injury on the day of the IRE. As noted, the WCJ was the final arbiter of fact in this case, and he found the testimony of Dr. Jurenovich to be credible and persuasive and that it established a valid impairment rating of 34% under the AMA Guides. Claimant failed to present her own expert testimony from which the WCJ could have determined that Dr. Jurenovich's opinions were speculative and arbitrary. That failure does not render the AMA Guides unconstitutional.

## D. Conclusion

For the foregoing reasons, we discern no error in the Board's affirmance of the WCJ's grant of the Modification Petition. Accordingly, we affirm the decision of the Board.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in the decision for this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah Reber,                              :
                Petitioner          :
                                    :
       v.                                  :    No. 868 C.D. 2023
                                    :
R.E. Shenker/Little Lexington Farms         :
(Workers' Compensation Appeal               :
Board),                                     :
                Respondent          :

## ***ORDER***

AND NOW, this 30th day of October, 2024, the July 31, 2023 decision of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge